## W. E. RICHMOND

### *v.*

## CHARLES K. MOORE.

*Filed at Ottawa June 16, 1883—Rehearing denied September Term, 1883.*

1. SUNDAY—*contract made on Sunday is valid.* A contract entered into on a Sunday is not void by reason of having been made on that day, either at the common law, or under the 261st section of the Criminal Code, forbidding the disturbance of the peace and good order of society by labor, etc., on Sunday. The statute was not intended to prohibit the transaction of business merely, as distinguished from labor, on Sunday. Decisions of other courts, holding a different rule, were made under statutes essentially different from our own.

2. STATUTE—*language construed in its ordinary sense.* The courts must, in the absence of all qualifying circumstances, presume that in the enactment of laws the language used was used in its ordinary sense. Hence, the word "labor," in section 261 of the Criminal Code, does not include mere business.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. E. A. OTIS, for the appellant:

In *King* v. *Fleming*, 72 Ill. 21, it was held that a note signed on Sunday, but not delivered until Monday, was not void, as it was not executed until its delivery. The same was held in respect of a deed, in *Love* v. *Wells*, 25 Ind. 503. In *Langabier* v. *Fairbury, Pontiac and Northwestern R. R. Co.* 64 Ill. 243, the issuing of an injunction on Sunday was justified on the ground of necessity. In *People* v. *Johnson*, 31 Ill. 469, the taking of a recognizance on that day was justified on the same ground. In *Baxter* v. *People*, 3 Gilm. 368, the court justified receiving a verdict on Sunday, but held that a judgment entered on that day was void. In *Thomas* v. *Hinsdale*, 78 Ill. 279, an attachment issued on Sunday was held void.

The statute carefully points out such acts as may be performed on Sunday, such as works of necessity and charity; carriers may discharge passengers and freight, ferries may carry travelers, and so, by implication as well as expressly, it prohibits other kinds of labor, both of body or brain. There are statutes on this subject in force in nearly all the States, based largely on 29th Charles II, chap. 7, and all substantially alike, and the decisions are uniform that contracts made on Sunday, unless subsequently ratified, or unless they come within some of the exceptions named in the statute, are absolutely null and void. *Holcomb* v. *Donley,* 51 Vt. 428; *Stevens* v. *Wood,* 127 Mass. 123; *Meader* v. *White,* 66 Maine, 90; *Ellis* v. *Hammond,* 57 Ga. 179; *Clough* v. *Goggin,* 40 Iowa, 325; *Tucker* v. *West,* 29 Ark. 386; *Varney* v. *French,* 19 N. H. 233; *O'Donnell* v. *Sweeny,* 5 Ala. 468; *Brimhall* v. *Van Campen,* 8 Minn. 13; *Adams* v. *Hamell,* 2 Doug. (Mich.) 73; *Banks* v. *Werts,* 13 Ind. 203.

That the act in question is remedial, and not a penal statute, is well settled. *Smith* v. *Wilcox,* 24 N. Y. 354; *Northrup* v. *Foot,* 14 Wend. 249; *Fennell* v. *Ridles,* 5 Barn. & Cress. 406; *Smith* v. *Sparrow,* 4 Bing. 84.

Mr. William H. Condon, for the appellee:

The common law of England, and the statutes and acts to supply its defects, with certain exceptions, which are the rule of decision in this State, were in force in England prior to the fourth year of James I, 1607. There was no Sunday law in force at that time in England, and this State has enacted none, except such as prevent disturbance on Sunday.

At common law Sunday differed from no other day, and all business transacted on that day was valid, with the exception of not being a day for legal proceedings. *Rex* v. *Brotherton,* Stra. 702; *Mackally's Case,* 9 Rep. 66 b, Cro. Juc. 280; *Waite* v. *The Hundred of Stokes,* id. 496; *Drury* v. *Defontaine,* 1 Taunt. 131; *Merritt* v. *Earle,* 31 Barb. 41.

Contracts made on Sunday were held valid in these cases: *Adams* v. *Gray*, 19 Vt. 358; *Miller* v. *Bousler*, 4 E. D. Smith, 234; *Boynton* v. *Page*, 13 Wend. 425; *Greenbury* v. *Williams*, 9 Abb. 206; *Shank* v. *Shoemaker*, 18 N. Y. 480; *Morris* v. *Cranes*, 4 Ch. sec. 6; *Myers* v. *Meinrath*, 3 Am. R. 368.

Where Sunday laws are in force against persons working in their ordinary calling, a sale of goods on Sunday, which was not in the ordinary calling of the vendor, has been held valid. *Drury* v. *Defontaine*, 1 Taunt. 131; 2 Parsons on Contracts, 757, and notes.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought in the Superior Court of Cook county. There was a special and the common counts. It was averred in the special count that a contract was entered into between the plaintiff and defendant that the former was to sail the vessel "Scotia" for the latter, during the season of 1880, for the sum of $1000, but defendant prevented plaintiff from performing the contract, whereby he had sustained loss, etc. Defendant pleaded the general issue, and gave notice that he would, under that plea, prove, on the trial, that the contract was not to be performed within one year from the time it was entered into, and there was no memorandum, in writing, of its terms, signed by the parties; and that the agreement was made on representations by plaintiff that he was competent, and possessed the requisite skill and knowledge to fill the position of master of the vessel; that he was a man of honor, integrity, and of good repute, and that such assurances were untrue and false, and the plaintiff was discharged for good cause. The case was submitted to the court for trial, by consent of the parties, without a jury. The court found the issues for plaintiff, assessed his damages at $566, and rendered a judgment in his favor for that sum, and costs. An appeal was perfected to the

Appellate Court, where the judgment was affirmed, and the case is brought here by appeal, on a certificate from the Appellate Court.

On the trial in the Superior Court the evidence tended to prove the agreement was entered into on Sunday. Defendant, on this evidence, asked the court to hold that the contract was prohibited by our statute, and was void, but the Superior Court refused to so hold, and the principal question discussed by counsel is, whether, under our statute, such a contract is void, or binding on the parties.

The provision of our statute which it is claimed renders this contract void, is the 261st section of our Criminal Code. The portion of that section claimed to render the contract void, is this: "Whoever disturbs the peace and good order of society by labor (works of necessity and charity excepted) or by amusements or diversion on Sunday, shall be fined not exceeding $25." It contains other exceptions, of which is this: "Nor to prevent the due exercise of the rights of conscience by whomsoever thinks proper to keep any other day as a Sabbath." The common law did not prohibit the making of such contracts. In *Drury* v. *Defontaine*, 1 Taunt. 136, Lord MANSFIELD, in delivering the opinion, said: "It does not appear that the common law ever considered those contracts as void which were made on Sunday." Judgment was accordingly given for the price of a horse sold on that day. And the doctrine is supported by the cases of *Comyns* v. *Boyer*, Cro. Eliz. 485, *Rex* v. *Brotherton*, Strange, 702, *The King* v. *Whitnash*, 7 B. & C. 596, and *Bloxsome* v. *Williams*, 3 id. 232,—and this is the doctrine of all the cases, English or American, with perhaps no more than one or two exceptions that announce a different doctrine. The doctrine that contracts made on Sunday are void, depends, therefore, alone on statutory enactments, and in the various States of the Union the statutes vary, in language or substance, and the decisions of the different courts have been based on the

phraseology of their several statutes. The common law, on the other hand, seems always to have prohibited all judicial proceedings on Sunday. Before the adoption of the 29th Car. II, chap. 257, legal process could be served on that day, as well as other ministerial acts pertaining to legal proceedings. (See Comyn's Digest, book 3, title "Temps.") And such has been held to be the law in this State. (*Baxter* v*! The People*, 3 Gilm. 368.) There is at the common law a well defined distinction between judicial and individual or ministerial acts performed on Sunday.

The 29th Car. II, chap. 257, seems to be the basis of the enactments of the various States of the Union. It is this: "That no tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, business or work, on the Lord's day." It contains exceptions, of which are works of necessity or charity. A mere glance at that and our statute will show that they are materially different. That prohibits labor and *business;* ours only prohibits labor or amusement that disturbs the peace and good order of society. The offence by that statute is the performance of labor or business, and by ours it is the disturbance of the peace and good order of society. The British statute is much more comprehensive in its purposes and language than ours. Ours only prohibits labor that disturbs the peace and good order of society, not naming business, whilst the British statute renders the mere act of labor or business penal.

Although we are required, under the first section of the chapter entitled "Statutes," to give all words, clauses and phrases found in all laws a liberal construction, to carry out the legislative intention, we have no power to inject provisions into the statute which were omitted by the law makers. We are, therefore, required by this rule to ascertain and enforce the intention of the statute, and a careful examination of our statute unmistakably shows the intention to be

to preserve the community from being disturbed by the labor or amusements of other persons. The language will bear no other construction. The 29th Car. II, was no doubt the statute from which ours was modeled, and when the legislature made such clear and substantial changes in the provision, we are irresistibly impelled to the conclusion that it was not intended to adopt the provisions of that act, or the construction given it by the British courts. The change in the language is so obvious and important that it repels all presumption that the intention was to adopt the British statute in its full scope. Our statute, by its very terms, is for the preservation of the peace and good order of society from disturbance. It is not, nor can it be, held to have been the purpose of the statute to compel the performance of a religious duty, however necessary to the future welfare of the individual failing to perform it.

But the statute does protect the religious community from being disturbed in their devotions and worship by the indecent disregard of their right to be undisturbed on that day. But it permits others, that do not recognize the Christian Sabbath, to keep another day of rest. This exception embraces Jews, Seven Days Baptists, and, it may be, some other religious denominations. The object of the statute is to protect persons keeping the Christian Sabbath as a day of holiness, from disturbance in its observance, and not to compel the performance of religious duties, as such. That is no part of governmental duty under our institutions. Our government is unlike the British government, as that government combines the ecclesiastical and secular powers. Its constitution is based upon the union of church and State, and it claims and exercises the power to enforce the faith and doctrines of the established church, by statutes imposing penalties for failing to perform religious duties and requirements, and compelling all to contribute support to the State church; on the contrary, however, a total severance of church

and State is one of the great controlling foundation prin-
ciples of our system of government. The spiritual welfare
of our people is left entirely to the hierarchy of the vari-
ous churches. The government protects all alike in their
religious beliefs and unbeliefs. It is no part of the function
of our government to prescribe and enforce religious tenets.
The great purpose of the formation of our system of govern-
ment is to protect the people in the enjoyment of their tem-
poral and spiritual rights, and to prohibit crime, vice and
wrong to any portion of the community, and to pass and
enforce laws for the promotion of the temporal interests of
the people, and, as far as possible, secure their temporal wel-
fare and happiness. Although it is no part of the functions
of our system of government to propagate religion, and to
enforce its tenets, when the great body of the people are
Christians, in fact or sentiment, our laws and institutions
must necessarily be based upon and embody the teachings of
the Redeemer of mankind. It is impossible that it should
be otherwise. And in this sense, and to this extent, our
civilization and institutions are emphatically Christian, but
not for the purpose of compelling men to embrace particular
doctrines or creeds of any church, or to support one or an-
other denomination by public burthens, but simply to afford
protection to all in the enjoyment of their belief or unbelief.
But the State has the unquestioned power to suppress crime,
vice and immorality, even if such acts are claimed to be the
exercise of religious belief.

The legislature is absolutely powerless to enforce religious
doctrines or beliefs, merely as such. It may be that in
suppressing crime, vice, or immorality, it may incidentally
enforce religious doctrines. The Christian religion forbids
all crime, vice and immorality, and good government equally
requires their suppression. They are suppressed by the gov-
ernment because required for the general welfare, and not
because they are religious doctrines. The third section of

article 2 of our constitution in terms guarantees the free exercise and enjoyment of religious profession and worship to all, and prohibits any preference from being given by law to any denomination or mode of worship, or being compelled to support any such worship.   In all countries and ages, among civilized or partially civilized peoples, governments have set apart days of rest, recurring at short periods.   This has been, and still is, regarded as necessary to the temporal welfare of the people, as a certain amount of rest is regarded as absolutely necessary to man and animals subjected to labor. Considerations of public policy demanding such periods of rest, and the great body of Christians holding the observance of Sunday to be a religious duty, it is natural that the law-making power, as a matter of public policy, should specify Sunday as the day of rest, thereby conforming public policy to religious sentiment.   But that Sunday is kept as a holy day by most Christian denominations neither adds to nor detracts from the validity of the enactment.   Had any other day of the week been selected, the enactment would have had the same binding force.

But even if such a contract was void at the common law, it would not necessarily follow that it would be under our laws.   We have seen that church and State were united under the British constitution, while they are totally severed by our constitution.   The government of Great Britain has the power to pass laws to promote and enforce religious tenets.   This is a part of the common law of England which was excluded from the constitutional power of the legislature, and is not adapted to our form of government, and the legislative power of the State is therefore left to adopt all laws tending to promote the general temporal welfare of the governed.   Nor has the judicial department any power to enforce religious doctrines, as such, but must be governed entirely by the law as it exists.   Courts can only enforce the law as it exists, and the legislature having failed to declare

contracts of the character of that under consideration void, we must enforce it as if it had been entered into on a secular day.

In support of these views we refer to the cases of *Specht* v. *Commonwealth*, 8 Barr, 312, *City Council* v. *Benjamin*, 2 Strob. L. R. 508, and *Bloom* v. *Richards*, 2 Ohio St. 387. In those cases it was held that it was merely exercising the power of the State in adopting such laws, which is wholly disconnected from any kind of religion; that the legislature had the power to select a day of rest, and could have as well selected any other day of the week; that it was essentially a civil regulation, made for the government of man, as a member of society, and it was held that the law interfered with no man's conscience because he was compelled to refrain from secular employment on that day; that the selection of a day of rest is a mere question of expediency. In New Hampshire, Vermont, Pennsylvania, Massachusetts, Alabama, Michigan, Georgia, Wisconsin, Maine and Minnesota, their several statutes, like the 29th Car. II, prohibit both labor and business on Sunday, and no doubt the statutes of other States contain similar provisions, and the decisions by the courts of those States referred to were made with reference to the language of their statutes.

In the case of *Bloom* v. *Richards*, *supra*, a contract was involved which was entered into on Sunday. In an able opinion, where the authorities are extensively reviewed, it was held the contract was valid, and capable of being enforced in their courts. The statute of the State prohibits labor, etc., on Sunday, under a penalty, but the act in terms does not prohibit the exercise of mere business, as do the other statutes to which we have referred, and it was there held that entering into a contract for the sale of land was not, in the sense of the statute, common labor.

Is the making of such a contract as that under consideration embraced in our statute as labor? Could the parties to

this contract have been criminally prosecuted, convicted and fined? If they could, then the contract is void, as no principle is more firmly established or better recognized than that a contract made which violates a statute is void. If the term "labor" necessarily embraces business of all kinds, why were the terms "labor" and "business" both used in the various statutes to which we have referred? It was for the obvious reason that those who framed and adopted the statutes supposed that the word "labor" did not necessarily embrace "business," nor does the word "labor" include as a definition mere "business," and this being the ordinary meaning of the word, we must accept it as the sense in which it was used by the legislature. We must, in the absence of all qualifying circumstances, presume, in the enactment of laws, that language is used in its ordinary sense. This is a canon of interpretation that has ever obtained. We must, therefore, accept this term in this sense.

But even under the 29th Car. II, the British courts have held that the sale of a horse on Sunday, out of the usual course of trade, by the vendor, was not void. (*Drury* v. *Defontaine, supra.*) So the hiring of a laborer on Sunday by a farmer for a year, was held legal and binding, and conferred a settlement of the laborer in the parish. (*King* v. *Whitnash, supra.*) That a baker might prepare dinners for his customers on Sunday. (5 T. R. 449; Chitty on Contracts, 335.) Thus it is seen that the statute was rigidly construed, and the same is true of most of the statutes of the various States of the Union. Here there was nothing done to disturb the peace and good order of society, which it is the primary purpose of the statute to prevent. . Had this contract been made in such a manner as to disturb the peace and good order of society, or any portion of it, then a very different question would have been presented, but one which need not be discussed here. But there is no evidence that in the slightest degree tends to prove any one was disturbed.

If this contract should be held to be illegal, then every contract not shown to have been absolutely necessary, or performed for charitable purposes, would be void, and render parties to it liable to the penalty. The marriage contract is held to be a civil contract by our laws, and yet vast numbers of such contracts are entered into on Sunday. It would be difficult to show such contracts necessary, in the sense of the statute, and shall it be held that such contracts are void, and the parties to them guilty of living in an open state of adultery or fornication, and liable to be criminally punished, and must their children be held to be bastards? Must a person be criminally punished for writing a letter to a friend on Sunday, or a barber for shaving a customer, or a person for selling to another a cigar, or purchasing and reading a newspaper on Sunday, and for almost innumerable like acts? Shall a person be punished because he studies scientific works or secular branches of literature on Sunday? The statute never could have been adopted in such a spirit or for such purposes.

It is claimed that the decisions of this court have virtually settled this question in favor of appellant. This is a misconception. In the case of *Johnston* v. *The People*, 31 Ill. 469, it was held that a recognizance, although to some extent a judicial act, taken on a Sunday, was valid. In the case of *Langabier* v. *Fairbury and Pontiac R. R. Co.* 64 Ill. 243, it was held that issuing an injunction on Sunday was not prohibited by the statute, because it was a matter of necessity. In the case of *Thomas* v. *Hinsdale*, 78 Ill. 259, it was held that the issuing of an attachment on Sunday was void. In the case of *Scammon* v. *Chicago*, 40 Ill. 146, it was held the publication of a legal notice which required the count of a Sunday issue of the paper to have the required number of publications, was not sufficient. In the case of *Baxter* v. *The People, supra*, it was held that it was illegal to enter a judgment on Sunday, but not to receive and record a verdict

on that day. The case of *King* v. *Fleming*, 72 Ill. 21, involved the validity of a promissory note made in Indiana, and signed by one of the makers on Sunday, but not delivered till a subsequent secular day, and the note was held valid. It is thus seen that this question has never before been presented to this court for decision. The legislature has the sole power to prohibit every kind of secular labor or business on Sunday, or such only as it may choose; but we have no power to prohibit any labor or business on that or any other day. We can only enforce the law as it is enacted. When the legislature shall prohibit labor, whether it shall disturb others or not, and the transaction of business, or the making of contracts, we will unhesitatingly carry out the legislative will; but we can neither add to nor detract from statutes as they are enacted.

Under the defence of the Statute of Frauds the circuit court heard the evidence, and held as a fact, from that evidence, that the contract was to be performed within one year from the time it was entered into by the parties, and that finding was affirmed by the Appellate Court, and we are precluded from examining the evidence to determine whether it sustains that finding.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*