Argued 16 June; decided 7 July, 1902.

## EX PARTE NORTHRUP.*

[69 Pac. 445.]

SUNDAY LAW—BARBERS—SPECIAL AND LOCAL LAW.

1. The barber law of 1901, making it a misdemeanor to carry on the business of barbering on Sunday, and providing a penalty for so doing, (Laws, 1901, p. 17) is not a special or local law for the punishment of crimes and misdemeanors, as prohibited by Const. Or. Art. IV, § 23, subd. 2, because, first, it is not a law at all for the punishment of offenses, and, second, because it applies alike to every locality in the state.

BARBERS' LAW—CLASS LEGISLATION.

2. A law prohibiting the practicing of a particular trade on Sunday, such as barbering (Laws, 1901, p. 17), is not class legislation, though there is no general Sunday law.

DEPRIVATION OF LIBERTY AND PROPERTY AND EQUAL RIGHTS.

3. A law making it a misdemeanor to do barbering on Sunday, such as Laws, 1901, p. 17, does not deprive any one of liberty or property without due process of law, as prohibited by Const. U. S. Amend. XIV, nor does it encroach on the equal rights which are declared by Const. Or. Art. I, § 1, to belong to all citizens; but it is a reasonable exercise of the police power, based on an apparent natural distinction.

From Multnomah: JOHN B. CLELAND, MELVIN C. GEORGE, and ALFRED F. SEARS, JR., Judges, in joint session.

Petition for release from custody by W. N. Northrup. From an order denying the writ, petitioner appeals.

AFFIRMED.

For appellant there was a brief over the names of *Cicero M. Idleman, Lionel R. Webster,* and *Robert W. Galloway,* with an oral argument by *Mr. Idleman.*

For respondent there was a brief over the names of *D. R. N. Blackburn,* Attorney General; *Geo. E. Chamberlain,* District Attorney; *John Manning* and *Arthur C. Spencer,* with an oral argument by *Mr. Blackburn* and *Mr. Chamberlain.*

---

* NOTE.—This case is also published in 55 Cent. Law Jour. 149, with a note, Constitutionality of Statutes Prohibiting All or a Particular Kind of Labor on Sunday.

Mr. Justice Wolverton delivered the opinion.

The legislature, at its last biennial session, enacted a statute making it "a misdemeanor for any person or persons to carry on the business of barbering on Sunday in Oregon": Laws, 1901, p. 17. The petitioner is charged with its violation, and, being in the custody of an officer, instituted a proceeding in the circuit court by *habeas corpus,* to secure his release, and, being unsuccessful, prosecutes an appeal to this court. The statute is challenged as in derogation to the fourteenth amendment to the federal constitution, and to Const. Or. Art. I, § 1, and Art. IV, § 23.

1. The first position taken by counsel for petitioner is that there is no Sunday law in this state, and that the act, by reason of its embracing such persons only as may fall within the designation of barbers, is necessarily special. Special legislation is inhibited by the state constitution relative to numerous subjects specifically designated, among which are those enumerated in section 23 of Article IV, and others that might be mentioned; but the subject of the legislation here inveighed against is not found among those so designated. It cannot be regarded as special legislation for the punishment of crimes and misdemeanors as inhibited by Const. Or. Art. IV, § 23, subd. 2, simply because it adds a penalty for an infraction of the law. The penalty is but an incident, and as the law does not fix a different penalty for different persons falling within its scope, and as it applies alike to every locality within the state, it is neither special nor local within the meaning of such subdivision.

2. Nor does it seem to us that the act can be characterized as special legislation because there is no general Sunday law within the state. If the classification is a proper one, and the act operates alike upon every individual of the class, its validity cannot be made to depend upon whether or not all persons are prohibited from doing any secular business or labor on Sunday. It is admitted that it is perfectly competent, under the constitution, to enact a law prohibiting any secular business or labor, other than works of necessity or mercy, upon the first day of the

week, commonly called Sunday. The later adjudications are uniform to that purpose, and it would be a work of supererogation to attempt to review them: *Hennington* v. *State,* 90 Ga. 396 (17 S. E. 1009) ; *Hennington* v. *State,* 163 U. S. 299 (16 Sup. Ct. 1086) ; *Bloom* v. *Richards,* 2 Ohio St. 387 ; *State* v. *Petit,* 74 Minn. 376 (77 N. W. 225) ; *Petit* v. *Minnesota,* 177 U. S. 164 (20 Sup. Ct. 666) ; *Ex parte Andrews,* 18 Cal. 678. So that the real and vital question herein is whether, in a broad sense, the act under consideration is obnoxious as class legislation.

A brief reference to the prior legislation of the state upon the subject will serve to give a clear understanding of the situation, and aid us materially in arriving at a correct and final solution of the controversy. In 1854, it was enacted by the territorial assembly "that no person shall keep open his or her store, shop, grocery, ball alley, billiard saloon, tippling house, or any place of gaming or amusement, or do any secular business, other than works of necessity and mercy, on the first day of the week, commonly called the Lord's Day or Sunday" (Laws, 1854-55, p. 283, § 1)., prescribing a penalty. In 1864, the state legislature adopted an act of identical import, except the words "or labor" were inserted after the phrase "or do any secular business"; and works of necessity were defined to be: (1) The buying and selling of meats, fish, or milk at retail, before 9 o'clock in the morning; (2) the buying and selling of drugs and medicines at retail or upon prescription; (3) the selling of food to be eaten on the premises where sold; and (4) the keeping open of barber shops and laboring at such trade until 10 o'clock in the morning: Deady's Laws, c. 49, § 653, subds. 1, 2, 3, 4. In 1865, this act was amended so as to read: "If any person shall keep open any store, shop," etc., "for the purpose of labor or traffic, or any place of amusement, on the first day of the week," etc., "provided that the above provision shall not apply to the keepers of drug stores, doctor shops, undertakers, livery stable keepers, barbers, butchers and bakers; and all circumstances of necessity and mercy may be pleaded in defense, which shall be treated as questions of fact for the jury to determine when the offense is

tried by jury" (Laws, 1865, p. 34) ; and such was the condition of the law at the time of the enactment of the statute under consideration. It may be noted that the law of 1865 does not inhibit labor on Sunday, except it be in connection with a store, shop, grocery store, etc., kept open for that purpose, or for traffic, and it excepted barber shops with other business vocations from its operation; and thus, and by the former legislation of 1864, indicating a legislative policy of classifying different business occupations, including barbers, and of dealing with them with reference to such classifications. The effect of the act in controversy is to take the business of barbering out of the category of the exceptions and classifications contained in the law of 1865, and to absolutely inhibit the prosecuting of such business on Sunday. Under the act of 1864, it was inhibited partially; that is, after 10 o'clock in the morning, and, unless it was a business of necessity, it was also inhibited by the territorial act of 1854.

3. Is the act in contravention of the fourteenth amendment of the federal constitution, in that it deprives the petitioner of liberty or property without due process of law, or of Const. Or. Art. I, § 1, in that it encroaches upon his guaranty of equal rights? Every individual, under the constitution, is entitled as of right to the greatest degree of freedom in action compatible with a just preservation of equal rights and privileges to every other citizen and the promotion of the public welfare. This is civil liberty. The fundamental principle upon which it is based is equality under the law, and it signifies not only freedom of the citizen from servitude and restraint, but accords to every one the right to be left free in the use of his powers and faculties, and to adopt and pursue such vocations and employment as his untrammeled will may suggest, subject only to such restraint as is necessary to secure the general welfare. The right of property, in its broad sense, is not only the right of possession and enjoyment, but also the right to secure it through any lawful industry, pursuit, or calling adopted in the exercise of one's liberty, which, it is said, "is the foundation of all wealth": *Braceville Coal Co. v. People,* 147 Ill. 66 (35 N. E. 62, 22 L. R. A. 340, 37 Am. St.

Rep. 206). So that any encroachments upon the rights of a citizen, or class of citizens, guaranteed to all under similar conditions and circumstances, may be said to deprive him or them of both liberty and property, and to be an invasion of the guaranteed equality in rights.

With these preliminary observations, let us proceed to the examination of the classification complained of. Mr. Cooley says: "Doubt might also arise whether a regulation made for any one class of citizens, entirely arbitrary in its character, and restricting their rights, privileges, or legal capacities in a manner before unknown to the law, could be sustained, notwithstanding its generality. Distinctions in these respects must rest upon some reason upon which they can be defended, like the want of capacity in infants and insane persons; and if the legislature should undertake to provide that persons following some specified lawful trade or employment should not have capacity to make contracts, or to receive conveyances, or to build such houses as others were allowed to erect, or in any other way to make such use of the property as was permissible to others, it can scarcely be doubted that the act would transcend the due bounds of legislative power, even though no express constitutional provision could be pointed out with which it would come in conflict": Cooley, Const. Lim. 484. The principle that there must be some natural and rational ground upon which to base the distinction for classification has been recognized and adopted by this court. "It may not be arbitrary, and requires something more than a mere designation by such characteristics as will serve to classify. The mark of distinction must be something of substance, some attendant or inherent peculiarity, calling for legislation, suggested by natural reason, of different character to subserve the rightful demands of governmental needs": *Ladd* v. *Holmes,* 40 Or. 167 (66 Pac. 714, 716) ; *State ex rel.* v. *Frazier,* 36 Or. 178 (59 Pac. 5). All admit the statute in question can only be sustained as a police regulation. In *State* v. *Petit,* 74 Minn. 376 (77 N. W. 225), where the act prohibited all labor on Sunday except works of necessity and charity, and provided that keeping open a barber shop on Sunday

should not be deemed a work of necessity or charity, it was held that the classification was not purely arbitrary, but that the apparent natural reasons suggesting the distinction were ample upon which to support legislative discretion in adopting it. The court, speaking through Mr. Justice MITCHELL, says: "The object of the law was not to interfere with those who wish to be shaved on Sunday, or primarily to protect the proprietors of barber shops, but mainly to protect the employes in them, by insuring them a day of rest." This case was appealed to the Supreme Court of the United States, where the court, speaking through Mr. Chief Justice FULLER, says: "We recognize the force of the distinction suggested, and perceive no adequate ground for interfering with the wide discretion confessedly necessarily exercised by the states in these matters, by holding that the classification was so palpably arbitrary as to bring the law into conflict with the federal constitution." If not in conflict with the federal constitution, it is necessarily not in conflict with our own.

In *People* v. *Havnor,* 149 N. Y. 195 (43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707), the court, in passing upon the constitutionality of a similar statute and assigning reasons for upholding the classification, says: "It is to the interest of the state to have strong, robust, healthy citizens, capable of self-support, of bearing arms, and of adding to the resources of the country. Laws to effect this purpose, by protecting the citizen from overwork and requiring a general day of rest to restore his strength and preserve his health, have an obvious connection with the public welfare. Independent of any question relating to morals or religion, the physical welfare of the citizen is a subject of such primary importance to the state, and has such a direct relation to the general good, as to make laws tending to promote that object proper under the police power, and hence valid under the constitution, which 'presupposes its existence, and is to be construed with reference to that effect'." A like act was upheld in *People* v. *Bellet,* 99 Mich. 151 (41 Am. St. Rep. 589, 57 N. W. 1094), upon the same principle. We are not unmindful of the fact, however, that there are other cases

in irreconciliable conflict with these: *Ex parte Jentzsch,* 112 Cal. 468 (44 Pac. 803, 32 L. R. A. 664) ; *Eden* v. *People,* 161 Ill. 296 (43 N. E. 1108, 32 L. R. A. 659, 52 Am. St. Rep. 365) ; *State* v. *Granneman,* 132 Mo. 326 (33 S. W. 784) ; *City of Tacoma* v. *Krech,* 15 Wash. 296 (46 Pac. 255, 34 L. R. A. 68). But we are impelled to the conclusion that the former are grounded upon the better reasoning; and, being in harmony with the legislative policy, as indicated by the acts referred to, relative to the subject-matter, from an early date, and having the sanction of the federal supreme court, we are constrained to hold that the law is valid under both the federal and state constitutions.    The judgment of the trial court will, therefore, be affirmed.                                        AFFIRMED.