Price, J.
The plaintiff in error was arrested on a warrant issued by the mayor of the village of Hartwell, on a charge of having unlawfully engaged in the business of barbering in the city of Cincinnati, on Sunday, the 29th day of July, 1906. He was arraigned, and on his application the case was continued to a future day, and by consent other continuances were granted, so that November 26, 1906, was fixed as the day of trial. The defendant then moved for a dismissal of the charge for want of jurisdiction in the mayor, which was overruled. He then moved to quash the affidavit and warrant because the affidavit did not state facts sufficient to constitute a crime. When this motion was overruled, he filed a demurrer, which was also overruled. Exceptions *30 were taken to these several rulings. Trial was had and the accused was found guilty and sentenced to pay a fine of fifteen dollars and the costs of prosecution.
Refusing to pay, the mayor issued a mittimus directed to the marshal of said village, commanding him to commit Stanfeal to the jail of said Hamilton county until said fine and costs were paid. Thereupon Stanfeal applied to one of the judges of the court of common pleas of said county for a writ of habeas corpus, alleging in his application that he was illegally restrained and deprived of his liberty by the said marshal. A writ was allowed to issue, and Stanfeal was taken by the sheriff of said county before another judge of said court, in pursuance of the command of said writ. On production of the mittimus under which the marshal was holding the prisoner, it appeared that he was committed to.the jail of the county “until said fine and costs are paid.” Holding that the order of commitment was in excess of the authority of the mayor, the court allowed the mayor to amend the mittimus so as to commit the prisoner until said fine and costs are paid “or secured to be paid.” This amendment was made. The case was then heard on the petition for the writ, no evidence being offered except the amended mittimus, and the petition was dismissed.
Error was prosecuted by Stanfeal in the circuit court where the judgment of dismissal was affirmed. He now prosecutes error in this court to reverse both judgments.
The plaintiff in error submits four reasons why the plaintiff in error should have been discharged *31 on his petition for habeas corpus, which are, though not in the order he arrays them:
(1) The mayor of the village of Hartwell “had no jurisdiction to make the commitment to jail until the fine and costs should be paid.”
(2) “That is was error for the common pleas court in the habeas corpus proceeding to permit the change in the commitment under which the petitioner for the writ was held; or to consider the commitment in any other form than as it stood at the time of the application for the writ of habeas corp%is.”
(3) “That the statute (Section 7033-1) is unconstitutional because it provides for a minimum fine without providing for a maximum fine.”
(4) “That the statute (Section 7033-1) making it a misdemeanor to engage in the business of barbering on Sunday, is unconstitutional, because it is class legislation.”
(1) That the mayor of Hartwell had jurisdiction over the offense charged against Stanfeal can not be successfully disputed. Hartwell is an incorporated village in Hamilton county, and it was alleged in the affidavit that the offense was committed in Hamilton county, and in case of misdemeanors, the jurisdiction of a mayor of such villages is co-extensive with the county. Section 1536-777, Revised Statutes.
The record discloses that after Stanfeal had been found guilty of violating the Sunday statute, he was fined fifteen dollars and adjudged to pay the costs of prosecution. These he refused to pay, and a mittimus was issued by the mayor and delivered to the marshal, commanding that said Stanfeal be committed to the county jail “until *32 discharged by due course of law.” But in the recitals of the writ it is said that the prisoner had been sentenced “to pay a fine of fifteen ($15) dollars and also eight ($8) dollars and five (5) cents, the costs therein taxed, and to be imprisoned in the jail of said county until said fine and costs are paid.” It was claimed before the judge to whom the petition in habeas corpus was presented, that the prisoner should be discharged because the mayor had no authority to order imprisonment until the fine and costs were paid.
As we have seen, this judgment did not order the imprisonment or the committal until such payment should be made. But the order was contained in the mittimus. When we' look to Section 15 36-793, Revised Statutes, we find it provided that, “when a fine is the whole or part of a sentence, the court, mayor, or president of the board of trustees, may order that the person sentenced shall remain confined in the county jail, work-house, or prison, until the fine and costs be paid, or secu,red to be paid, or the offender be otherwise legally discharged.” The clause, “or secured to be paid,” was not in the mittimus, and its amendment was suggested.
It was amended to conform to the statute last referred to, and oh further hearing the petition for the writ of habeas corpus was dismissed. The proceedings touching the amendment were excepted to. Was error committed in this particular?
Section 5729, Revised Statutes, which is a part of the chapter on habeas corpus, provides: “If it appear, that the person alleged to be restrained of his liberty is in custody of an officer under process issued by a court or magistrate, or by virtue of the *33 judgment or order of a court of record, and that court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ shall not be allowed; or, if the jurisdiction appear after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment or order.”
In this case, after the writ had been allowed, as we assume from the record, either by amendment of the first mittimus or by a new mittimus, it appeared that the mayor's order was within the law pertaining to his jurisdiction. The prisoner could secure the payment of the fine and costs if not able or willing to pay. In such case we think the prisoner should not be discharged, for it is not the policy of our law to sanction the discharge of prisoners on defects, in the proceeding which occur after sentence, and in an effort to carry it into execution. The amendment, or the new mittimus, as the case may have been, violated no fundamental right of the prisoner, but tended to afford a legitimate means of vindicating the law, which he was found to have violated. The punishment of the guilty rather than their escape, seems to be the purpose of all penal statutes. See In re Bonner, 151 U. S., 242; Ex parte Van Hagan, 25 Ohio St., 426.
In several cases this court has set aside an excessive sentence and remanded the case to 'the trial court for re-sentence, and a judge in habeas corpus proceedings, where a valid judgment exists, may allow correction of the process issued thereon. We find no error on this branch of the case.
(2) What we have already said on the first *34 point fully answers the second and we will not repeat the discussion.
(3) and (4) Inasmuch as points three and four are kindred in character, they will be considered together. It is said that Section 7033-1, Revised Statutes, is unconstitutional because it is class legislation, and because it provided for a minimum without providing for a maximum fine.
The section referred to reads: “Any person who engages in the business of barbering on Sunday shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than fifteen dollars, and upon a subsequent- conviction for a like offense shall be fined not less than twenty dollars and not more than thirty dollars, or imprisoned in the county jail for a period of not less than twenty days nor more than thirty days, or be both fined and imprisoned at the discretion of the court.”
Serious fault is found in this statute because there is no maximum penalty fixed for the first offense, and it is true that in the exercise of legislative wisdom a maximum penalty for a first offense was not thought of. However, it did come to mind when the next sentence was written fixing both minimum and maximum penalties for a subsequent offense. We are informed the law is bad on this account, because for a first offense there is no limit in the ascending scale of fines to which the court may not go. But we have no case before us where such liberty was taken. The minimum fine was assessed, and we should not overturn a statute and hold it void because it is possible that some time in some other case, a court may impose an excessive or unreasonable penalty. The abuse of *35 judicial discretion should not be anticipated where, for a subsequent offense, the statute fixes reasonable minimum and maximum penalties. The court would not be tempted to inflict a more severe penalty on the first breach of the law than is permitted in case of a subsequent breach of like kind. The law is not bad on that ground.
The more important question is made against it on the ground that it is class legislation and does not except from its operation those who conscientiously observe the seventh day of the week as Sabbath; nor does it except works of necessity and charity. A brief review of so-called Sunday legislation, in its different stages, may aid in determining the controversy in the case before us. From a very early day, it was considered by the general assembly to be necessary to provide for the observance of the Sabbath day. While actuated perhaps by a sense of religious duty on the part of some members of that body in enacting laws upon the subject, this court construed the Sunday law as a police regulation. In Bloom v. Richards, 2 Ohio St., 388, it was held that prohibiting common labor on the Sabbath could not stand for a moment as the law of this state if its sole foundation was the Christian duty of keeping that day holy, and its sole motive to enforce the observance of that duty; that it is to be regarded as a mere municipal or police regulation, having no connection with religion, and whose validity is neither strengthened nor weakened by the fact that the day of rest it enjoins is the Sabbath day. The same view was taken in McGatrick v. Was on, 4 Ohio St., 566. These decisions were rendered under the early statute then still in force, being *36 the act passed February 17, 1831. See S. & C, 447. It prohibited any person of the age of fourteen years, or upward, from sporting, rioting, quarreling, hunting, fishing, shooting, or performing common labor on the first day of the week, commonly called Sunday, excepting works of necessity and charity only. And it provided that nothing in the act should be construed to extend to those who conscientiously do observe the seventh day of the week as Sabbath. For a violation .of the act the convicted party should pay a fine not exceeding five dollars nor less'than one dollar.
Thus the law stood until March 30, 1864, when the act was amended in some respects. See 61 O. L., 104. The amending act made the penalty for sporting, rioting, quarreling, hunting, fishing, or shooting on Sunday a fine not exceeding twenty dollars, or confinement in the county jail not exceeding twenty days, or both. The fine for common labor was left the same, and the same exceptions as to works of necessity and charity, etc., were incorporated. Afterwards a part of said statute became Section 7032, Revised Statutes, and April 9, 1881, Section 7032a was enacted and present Section 7033 is now a separate provision, but all of them have a common root. 93 O. L., 358.
It is to be noted that the amendment enlarges the penalties which may be inflicted and extends the field of. its operation, which is apparent from its language. The same exceptions are found here that were made in former provisions. This is sufficient as summary of the general law enacted to regulate the observance of the Sabbath day.
We now come to a -consideration of Section *37 7033-1, which appears earlier in this opinion, and which relates to the business of barbering on Sunday. The first act on the subject was passed April 12, 1892, and its title was: “An act to prohibit barbering on Sunday.” A violation of the act was made punishable by a fine of not more than five dollars, and on conviction for a like offense, the fine should be not less than ten or more than twenty-five dollars, or imprisonment in the county jail for not less than five days nor more than ten days, or both fine and imprisonment might be imposed. See 89 O. L., 252. This was amended March 14, 1893, so as to produce the present Section 7033-1. See 90 O. L., 79. An increase in the penalties is the distinct feature of the amendment.
While the statutes making the business of barbering on Sunday illegal appear, not as amendments to the general laws theretofore existing, but in the form of independent enactments, still they relate to the same subject, to-wit, the observance of Sunday, and are to be regarded as in pari materia with the general laws' upon the same subject, and it is worthy of note that both classes of the Sunday laws we have quoted or given in substance, seemed to recognize that their violation was becoming more frequent and persistent, and that heavier penalties must be imposed. This fact is disclosed in every amendment made in the general Sunday law, and also in the amendment to the law against barbering. The lax observance of the day has been growing apace during past years, notwithstanding more stringent regulation and more severe penalties. Therefore, the legislature in the exercise of its police-powers, has not *38 only specified common labor as prohibited, but particular conduct on that day has been penalized, and when it became common for barbers to be a law unto themselves and keep open shop on Sunday, the legislature, by Section 7033-I, supra, declared that particular business illegal on that day, so that barbers might understand that their work was not one of necessity or charity, but within the list of things prohibited. Hence, we must consider all the Sunday legislation when we decide the claim of class legislation.
It is more than probable that before the first statute, the business of barbering on Sunday was regarded as, or was claimed to be a work of necessity, if not charity, and was within the exemption provided in the Sunday law. It may have been urged when one was charged with performing common labor by shaving persons as a business on that day, that such labor was a work of necessity as society was then constituted and business conducted. By the act here involved, in its first and present form, that question is put beyond dispute, and the legislature, in place of recognizing that business as a work of necessity or charity, has declared it to be a misdemeanor, and what was before a question of fact to be determined, is now settled and the law says it is neither. To settle all disputes on the facts was the purpose of this act and the same observation can be made of Section 7032, supra, and 7032a, supra. In one of these sections the legislature has specified certain sports and other acts as illegal on Sunday; and in the other section is quite a list of amusements and occupations which are prohibited on the Sabbath. Anyone engaged in such amusements or *39 sports might complain that the laws against them are class legislation, because they are selected among the occupations of men in general, and made the target of penal legislation. But under the police powers necessarily vested in the legislature, no one has yet shaken their constitutional validity.
Similar legislation in other states has been assailed and tested in the courts of last resort. Some of the adjudications are cited in brief of defendant in error. We select one case as a fair representative of many others. In State v. Petit, 74 Minn., 376, it is shown that Petit was tried and convicted on a charge of keeping open a barber shop on Sunday. He objected to the introduction of any testimony under the charge, because it alleged no crime under the laws of Minnesota, and that the law upon which the charge was made contravened the state and federal constitutions. The statute of that state provided that, “all labor on Sunday is prohibited, excepting the works of necessity or charity. In works of necessity or charity is included whatever is needful during the day for good order, health or comfort of the community; provided, however, that keeping open a barber shop on Sunday for the purpose of cutting hair and shaving beards shall not be deemed a work of necessity, or charity/’ As a summary of the decision the syllabus says: “The state may, as a police regulation for the promotion of the physical, mental and moral welfare of its citizens, establish as a civil and political institution, the first day of the week as a day of rest, and prohibit the performance upon it of all *40 labor or business except works of necessity or charity.”
It was further held that the statute was not obnoxious to the objection of being “class legislation,” because it declares that as a matter of law, keeping open a barber shop on Sunday, for the purpose of hair-cutting and shaving, is not a work of necessity or charity, while as to other kinds of labor or business, it leaves that question to be determined as one of fact.” In the opinion, by Mitchell, J., it is said in substance, that the legislation proceeds upon the theory, entertained by most of those who have investigated the subject, that the physical, intellectual and moral welfare of mankind requires a periodical day of rest from labor, and as some particular day 'must be fixed, the one most naturally selected is that which is regarded as sacred by the greatest number of citizens, and which by custom is generally devoted to religious worship, or rest and recreation, as this causes the least interference with business or existing customs.
The above case was taken to the supreme court of the United States and its decision is found in 177 U. S., 164, where the judgment of the supreme court of Minnesota was affirmed in a learned opinion by Chief Justice Fuller.
We have examined the following cases, and find them supporting the preceding adjudications: Breyer v. State, 102 Tenn., 103; People v. Haynor, 149 N. Y., 195; People v. Bellet, 99 Mich., 151; Ex parte Northrup, 41 Ore., 489; State v. Bergfeldt; 41 Wash., 234. There are many like cases not necessary to be cited.
If anything is urged against the law because it *41 does not except the rights of those who conscientiously observe the seventh day of the week as Sunday, it is suggested that Section 7033-1 is a part of the general legislative scheme to regulate the observance of Sunday, in which such exception is provided. Besides, the plaintiff in error has not asserted that he belongs to the class who observe the seventh day of the week as Sunday, and therefore is not in position to assert the invalidity of the statute because of a lack of such exception.
We conclude that the judgment of the lower court should be and it is affirmed.

Judgment affirmed.

Shauck, C. J., Crew, Summers, Spear and Davis, JJ., concur.