BRUNSWICK-BALKE-COLLANDER CO. v. EVANS et al.

(District Court, D. Oregon. January 3, 1916.)

No. 6940.

1. STATUTES ⊂=118—TITLES AND SUBJECTS OF ACTS.

The title of Act Or. Oct. 19, 1864, entitled "An act to provide a Code of Criminal Procedure and to define crimes and their punishment" (Deady & Lane's Gen. Laws, p. 436 note), sufficiently expresses the subject-matter of such act, within Const. Or. art. 4, § 20, providing that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 158–160; Dec. Dig. ⊂=118.]

2. STATUTES ⊂=118—TITLES AND SUBJECTS OF ACTS.

Const. Or. art. 4, § 20, requires the subject of every act to be expressed in the title. Section 22 provides that no act shall ever be revised or amended by mere reference to its title, but that the act revised or section amended shall be set forth and published at full length. Act Dec. 18. 1865, entitled "An act to amend an act entitled 'An Act to provide a Code of Criminal Procedure, and to define crimes and their punishments,' approved October 22, 1864" (Laws 1865, p. 34), amends section 653 of the Code to read as therein set forth. Held, that the title is sufficient, though it does not mention section 653, as reference to the body of the amendatory act removes any doubt as to the subject-matter involved.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 158–160; Dec. Dig. ⊂=118.]

3. STATUTES ⊂=118—TITLES AND SUBJECTS OF ACTS.

Act Or. Dec. 18, 1865, the title of which recites that it is an act to amend an act to provide a Code of Criminal Procedure, provides that section 653 is thereby repealed, and "the following is enacted in place thereof"; such section as amended being then set out. Held, that this amounted to an amendment of the section, and the title was not insufficient because it failed to indicate that the purpose of the act was to repeal section 653.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 158–160; Dec. Dig. ⊂=118.]

4. STATUTES ⊂=118—TITLES AND SUBJECTS OF ACTS.

That the title of Act Or. Dec. 18, 1865, amending Code Cr. Proc. § 653, incorrectly recites the date of the approval of the act enacting the Code, does not affect the sufficiency of such title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 158–160; Dec. Dig. ⊂=118.]

5. SUNDAY ⊂=2—STATUTORY PROVISIONS—VALIDITY.

Statutes relating to the observance of Sunday are enacted in the legitimate exercise of the police power of the state.

[Ed. Note.—For other cases, see Sunday, Cent. Dig. § 2; Dec. Dig. ⊂=2.]

6. CONSTITUTIONAL LAW ⊂=240, 296—SUNDAY ⊂=2—STATUTORY PROVISIONS—VALIDITY.

L. O. L. § 2125, provides for the punishment of any person keeping open any store, shop, etc., for the purpose of labor or traffic on Sunday, but provides that this shall not apply to the keepers of drug stores, doctor shops, undertakers, livery stable keepers, butchers, and bakers. Held, that this does not violate Const. U. S. Amend. 14, providing that no state shall deprive any person of life, liberty, or property without due process of law,

nor deny to any person within its jurisdiction the equal protection of the laws, as the Legislature did not go beyond its legitimate discretion, and arbitrarily set a classification upon certain occupations, without a reasonable basis for distinction between them and other occupations not included within the act, especially as any doubt should be resolved in favor of the validity of the act.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 688, 692, 693, 697-699, 825-838, 840-846; Dec. Dig. ☞240, 296; Sunday, Cent. Dig. § 2; Dec. Dig. ☞2.]

7. CONSTITUTIONAL LAW ☞84—RELIGIOUS LIBERTY—CONSTITUTIONAL PROVISIONS.

The United States Constitution makes no provision for protecting citizens of the respective states in their religious liberties, and imposes no inhibition on the states in this respect, and the matter is left exclusively to state Constitutions and laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 152-154; Dec. Dig. ☞84.]

8. CONSTITUTIONAL LAW ☞84—SUNDAY—STATUTORY PROVISIONS—VALIDITY.

L. O. L. § 2125, prohibiting the keeping open on Sunday of certain places of business, does not violate Const. Or. art. 1, § 3, providing that no law shall control the free exercise and enjoyment of religious opinions, or interfere with rights of conscience, as such laws are civil and not religious in character, and are not designed to restrain or coerce any religious observation of Sunday, but are enacted to protect all persons from the physical and moral debasement which comes from uninterrupted labor, and the fact that the law is sometimes called a "Sunday law," or that it is referred to in marginal notes by annotators as "profanation of Sunday," is immaterial.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 152-154; Dec. Dig. ☞84.]

In Equity. Suit by the Brunswick-Balke-Collander Company against Walter H. Evans and others for an injunction. Injunction denied.

W. T. Hume, of Portland, Or., for complainant.

Walter H. Evans, Dist. Atty., and George Mowry, Deputy Dist. Atty., both of Portland, Or., and Joseph M. Devers, Dist. Atty., of Eugene, Or., for defendants.

Before GILBERT, Circuit Judge, and WOLVERTON and CUSHMAN, District Judges.

WOLVERTON, District Judge. This is a suit to enjoin the enforcement of what is styled the Sunday closing law. The complainant represents itself as engaged in the manufacture and buying and selling of billiard tables and bowling alleys, and their furnishings and equipments, and alleges that its business within the state would be seriously and irreparably affected by an enforcement of the law. The defendants consist of divers prosecuting attorneys and sheriffs of the state of Oregon, who, it is further alleged, are enforcing and threatening to enforce the law. The law is claimed to be unconstitutional, and therefore void and inoperative, for several reasons, which will be discussed later.

First, let us take a survey of the history of the statute complained of. By an act of the Legislative Assembly of the state of Oregon,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

approved October 19, 1864 (see footnote Deady and Lane's Code, p. 436), entitled "An act to provide a Code of Criminal Procedure, and to define crimes and their punishment," a Code of Criminal Procedure was adopted, consisting of 53 chapters and 731 sections. Among these was section 653, which reads:

"If any person shall keep open any store, shop, grocery, ball alley, billiard room, tippling house, or any place of amusement, or shall do any secular business or labor, other than works of necessity or mercy, on the first day of the week, commonly called Sunday, or the Lord's day, such person, upon conviction thereof, shall be punished by fine not less than five, nor more than fifty dollars. The following are deemed works of necessity:

"1. The buying and selling of meats, fish and milk at retail, before nine o'clock in the morning;

"2. The buying and selling drugs and medicines at retail or upon prescription;

"3. The selling of food, to be eaten on the premises where sold; and

"4. The keeping open of barber shops, and laboring at such trade until ten o'clock in the morning."

By an act approved December 18, 1865, entitled "An act to amend an act entitled 'An act to provide a Code of Criminal Procedure, and to define crimes and their punishment,' approved October 22, 1864," the Legislative Assembly made the following declaration:

"Be it enacted by the Legislative Assembly of the state of Oregon:

"Section 1. That section 653 of the above entitled act be and the same is hereby repealed and the following is enacted in place thereof:

"'Sec. 653. If any person shall keep open any store, shop, grocery, ball alley, billiard room, or tippling house, for the purpose of labor or traffic, or any place of amusement, on the first day of the week, commonly called Sunday or the Lord's day, such person upon conviction thereof, shall be punished by a fine, not less than five, nor more than fifty dollars:

"'Provided, that the above provision shall not apply to the keepers of drug stores, doctor shops, undertakers, livery stable keepers, barbers, butchers and bakers; and all circumstances of necessity and mercy may be pleaded in defense, which shall be treated as questions of fact for the jury to determine, when the offense is tried by jury.'"

Sess. Laws 1865, p. 34.

It will be noted that the words "or shall do any secular business or labor, other than works of necessity or mercy," contained in the original section, are omitted from the later enactment, and subsections 1, 2, 3 and 4 in the original act are superseded by the proviso in the later enactment. When Bellinger & Cotton's Code was compiled, section 653 became section 1968. By an act filed in the office of the secretary of state February 24, 1903, section 1968, B. & C. Comp. was amended, the amendment consisting in omitting the word "barbers" from the proviso and including "theaters" therein. This section as amended is now known as section 2125, Lord's Oregon Laws. This stands as the statute at the present time.

It is first urged with emphasis that the amendatory act of December 18, 1865, was adopted in violation of section 20, art. 4, of the Constitution of Oregon, in that the subject-matter of the act was not expressed in the title.

[1] It does not seem to be seriously questioned that the original title for the adoption of the Code of Criminal Procedure was sufficient,

as properly expressing the subject-matter of the act, although it dealt with practically the whole category of crimes, and the manner in which prosecution might be had and punishment enforced. True, the subject-matter in such a title would be expressed in a very general way, but nevertheless it would be described in the title. If it were held that such a title was insufficient for the purposes of the act, a needless amount of detail in legislation would be entailed, and to no practical purpose. But enactments of the kind are upheld by the courts, and, we think, properly. In re Donnellan, 49 Wash. 460, 95 Pac. 1085; Cook & Plunkett v. Marshall County, 119 Iowa, 384, 93 N. W. 372, 104 Am. St. Rep. 283.

[2] Now, the title being sufficient for an original act, it ought to be sufficient to amend by. As is said in State v. Phenline, 16 Or. 107, 109, 17 Pac. 572, 574:

"Amending a section of an existing act requires no new title; the same title applies as much to the act as amended as it did to the original one, and the title expresses the subject of it, unless there has been a clear departure and complete change of substance from the original."

See, also, Northern Pacific Express Co. v. Metschan (Circuit Court of Appeals, 9th Circuit) 90 Fed. 80, 32 C. C. A. 530.

It has become a practice of the Legislature to amend by mere reference to a section of the Compiled Laws of the state, then setting forth the section as amended, and this practice has been judicially approved, with the restriction only that the subject-matter of the amendment must be such as could have been included in the original act as matter properly connected therewith. Thus it was held in Ex parte Howe, 26 Or. 181, 184, 37 Pac. 536, 537, Mr. Justice Bean, now of this bench, writing the opinion, that a reference in the title of a legislative act to the particular section of a compilation sought to be amended—

"is a sufficient statement of the subject for a mere amendatory act, and if the provisions of the amendment could have been included in the original act without violating the Constitution, it is valid."

So it was held in a later case, Murphy v. Salem, 49 Or. 54, 58, 87 Pac. 532, 533:

"The title of an amendatory act is sufficient if it refers to the particular section it is intended to alter and is not violative of article 4, section 20, of the fundamental law of the state, unless the provisions of the amendment are such as could not have been included in the original act as matters properly connected therewith."

By section 22, art. 4, of the Constitution, no act can be amended by mere reference to its title, but "the act revised or section amended" is required to be set forth and published at full length. In determining the sufficiency of the title of an amendatory act, this section must be read in connection with section 20, art. 4, of the Constitution, and if it appears from the matter set forth in the body of the amendatory act that it is germane to the subject-matter of the original act, it would seem, applying the doctrine of the Phenline Case, that it is sufficient. That is to say, the intendment of both these constitutional

regulations is subserved if the title of the amendatory act is in effect to amend by the original title, or by section, and the section as amended is set forth and published in full, and the subject-matter thereof is germane to and is expressed in the original title.

The amendatory act of 1865 meets every requirement of these constitutional provisions as thus interpreted. True, the title would have been more definite and certain had it read "An act to amend section 653 of an act entitled an act," etc. But where reference is had to the body of the amendatory act, and we are apprised by section 22, art. 4, of the Constitution that the section as amended must be set forth in full, then, when read in connection with the title, there can be no further doubt touching the subject-matter involved, and, if that be germane to and is expressed in the title, the title is sufficient.

This much for the title of an amendatory act.

[3, 4] But it is further objected that section 1 of the act purports to repeal section 653, and that this provision for a repeal is nowhere expressed in the title. Reading the section further, however, we find it is declared in the same sentence that the "following" shall be "enacted in place thereof." This shows the method which the Legislature adopted for securing the amendment, which was to repeal and re-enact as amended, whereas the usual way is to declare that the law is amended to read "as follows"—setting out in full the law as amended. Both methods amount to the same thing. The true purpose was to amend, and the effect of the legislation was to amend. Knights Templars' Indemnity Co. v. Jarman, 187 U. S. 197, 205–257, 23 Sup. Ct. 108, 47 L. Ed. 139. So that, whether the Legislature adopted the one means or the other, the result was the same, and the title, therefore, is not objectionable for not stating that it was an act to repeal. It was sufficient that it stated the true intent, namely, that it was an act to amend. We think the subject-matter of the act was sufficiently expressed in the title, and therefore hold that the act is not void on account of the objections made to such title. Nor do we think that the mistake contained in the title respecting the date of the approval of the original act affects the question. State ex rel. v. Banfield, 43 Or. 287, 72 Pac. 1093.

This renders it unnecessary that we further discuss the later amendment of the section.

The next contention is that the act is void "as being in contravention of the Fourteenth Amendment of the Constitution of the United States, and section 20 of article 1 of the Constitution of the state of Oregon, in this: That the said amendment purports to make an arbitrary distinction between different businesses of the same general class, and to grant special privileges and immunities in this: That it provides a penalty for, and prohibits, the keeping open of any store, shop, grocery, ball alley, billiard room, or tippling house for the purpose of labor or traffic, or any place of amusement, on the day named, and exempts from the provisions of the act keepers of drug stores, doctor shops, undertakers, livery stable keepers, barber shops, and bakers."

This presents a question, as thus stated by counsel (for we have been quoting from counsel's brief), of both state and federal character, as to whether the law is in contravention, not only of the state, but of the

national, Constitution as well. The principle in controversy, however, is the same, whether we call it a state or a federal question. As a state question, the matter has been conclusively determined by the decisions of the Supreme Court of the state. Ex parte Northrup, 41 Or. 489, 69 Pac. 445; State v. Nicholls, 151 Pac. 473. In the latter case, a very recent one, the court dealt first with the police power and then with classification of the subjects of legislation. It was ascertained that the regulation of the pursuit of occupations on Sunday is referable to the police power of the state, and so, ascertaining as much, the court passed to the question of classification, and upheld the very law now assailed. By reason of the language of the learned judge, Mr. Justice Burnett, who announced the opinion, in passing to the question of classification, namely, "Granted the postulate that it is within the scope of the police power to suspend activity in certain vocations on Sunday," it is argued that the court did not decide the preceding question, nor intend to do so, but only assumed it to be the law, and therefore that the question is still open in the state court. The criticism is narrowly drawn, for the court was at pains, prior to proceeding at all with a discussion of the later question, clearly and specifically to decide the proposition which forms the basis of the postulate. Having conclusively and satisfactorily determined the law so to be, it became a postulate with the court—a thing properly assumed to be true; and that is the sense, no doubt, in which the language was used. The state question must be regarded as settled adversely to complainant's contention.

[5] But, were it at all questionable that the Sunday closing act relates to matter referable to the police power of the state under state adjudications, the subject has been put at rest by the Supreme Court of the United States, where it has been uniformly recognized that state laws of the kind here in controversy, relating to the observance of Sunday, are enacted in the legitimate exercise of the police power of the state. Hennington v. Georgia, 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166; Petit v. Minnesota, 177 U. S. 164, 20 Sup. Ct. 666, 44 L. Ed. 716. It is unnecessary to pursue the particular subject further.

[6] We may now turn to the question whether the classification adopted by the Legislature, of occupations made amenable to the act, is obnoxious to the injunction of the Fourteenth Amendment to the federal Constitution. The clause of the amendment invoked by counsel is:

"Nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The intendment of this clause is set out by Mr. Justice Field with his accustomed clearness in Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 359 (28 L. Ed. 923). Among other things, he says it was intended—

"not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; * * * that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under

like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition. * * * But neither the amendment," he continues, "nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people."

As it respects classification, it having been ascertained that the power to regulate the closing of business occupations on Sunday appropriately pertains to the police power of the state, the details of such regulation, and the exceptions proper to be made, very naturally rest with the discretion of the state Legislature, and—

"unless," says the court in Watson v. Maryland, 218 U. S. 173, 178, 30 Sup. Ct. 644, 646 (54 L. Ed. 987), "such regulations are so unreasonable and extravagant as to interfere with property and personal rights of citizens, unnecessarily and arbitrarily, they are within the power of the state; and that the classification of the subjects of such legislation, so long as such classification has a reasonable basis, and is not merely arbitrary selection, without real difference between the subjects included and those omitted from the law, does not deny to the citizen the equal protection of the laws."

See also Griffith v. Connecticut, 218 U. S. 563, 569, 31 Sup. Ct. 132, 54 L. Ed. 1151, where the language above is quoted and the doctrine reaffirmed.

In a still later case (Mutual Loan Co. v. Martell, 222 U. S. 225, 235, 32 Sup. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913B, 529), it was specifically held that, as to the classification, it "need not be scientific nor logically appropriate, and if not palpably arbitrary, and is uniform within the class," it is within the legislative discretion. And where the Legislature, under such discretion, has declared a particular policy, its action will not be disturbed by the federal courts as obnoxious to the Fourteenth Amendment, "unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched." Missouri, Kansas & Texas Ry. Co. v. May, 194 U. S. 267, 269, 24 Sup. Ct. 638, 48 L. Ed. 971; Williams v. Arkansas, 217 U. S. 79, 90, 30 Sup. Ct. 493, 54 L. Ed. 673, 18 Ann. Cas. 865.

Now, applying these principles, it is very clear that the court cannot say that the Legislature of the state acted beyond its legitimate discretion and arbitrarily set a classification upon certain business occupations without reasonable basis for distinction between such occupations and other occupations not included within the act. If there were any doubt about the matter, it would be our duty to resolve the doubt in favor of the constitutionality and validity of the act. It follows that the act is not void as in contravention of the Fourteenth Amendment of the federal Constitution.

[7] The next contention is that the act interferes with the free exercise and enjoyment of religious opinion, in contravention of section 3, art. 1, of the state Constitution, which prescribes that:

"No law shall in any case whatever control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience."

This is purely a state, not a federal, question. The Constitution of the United States makes no provision for protecting citizens of the re-

spective states in their religious liberties; nor does it impose any inhibition in this respect on the states. That is a matter left exclusively to the state Constitutions and laws enacted in pursuance thereof. Permoli v. First Municipality, 3 How. 589, 609, 11 L. Ed. 739.

[8] Laws setting aside Sunday as a day of rest, as usually adopted and promulgated, are generally upheld, not from any right of the government to legislate for the purpose of compelling any particular observance, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor.

"Such laws," says Mr. Justice Field, "have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops and in the heated rooms of our cities, and their validity has been sustained by the highest courts of the states." Soon Hing v. Crowley, 113 U. S. 703, 710, 5 Sup. Ct. 730 (28 L. Ed. 1145).

We need only look to the draft of the law in question to determine that it is not designed to restrain or coerce any religious observance of Sunday, but rather that the inhibition was imposed in the exercise of police regulation for the public welfare. It does not comprise all occupations and trades, but such only as the Legislature has, in its wisdom, thought to be detrimental to the health and morals of the community, if kept open on Sunday. If it were designed to promote Sunday observance as a religious rite, one would expect the law to be general, so as to affect all persons and individuals, whatever might be their occupations or pursuits, and not only the few occupations named and the persons engaged therein. The act, therefore, is essentially civil in character, and not religious; nor does it pertain to religious observance in any particular. The original act of 1864 was much broader in scope, forbidding any secular business or labor on Sunday. But, even viewed in its broadest sense, such an enactment is generally regarded as of civil import for the promotion of the health, peace, and good order of society, and not for the promotion of any religious observance. 37 Cyc. 541.

That the law is sometimes called a "Sunday law," or is referred to in marginal notes by annotators as "profanation of Sunday," does not alter the question. The interpretation must be had by a consideration of the act itself, and not by what it may be popularly called. Nor does the fact that the law has been but little enforced require its nullification now. The act is not in contravention of article 1, § 3, of the state Constitution.

It follows that the injunction prayed must be denied.