296:34 LRA.

## WILLIAM S. EDEN

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield May 12, 1896.*

1. SUNDAY—*common law rule as to observance of.* The common law does not prohibit ordinary labor on Sunday.

2. CONSTITUTIONAL LAW—*"due process of law"—laws of unequal operation.* A barber is deprived of property without due process of law by a statute making it unlawful for him to do business on Sunday, where it does not apply to any other class of business.*

3. SAME—*police power does not justify class legislation.* The police power does not justify a statute making it unlawful for barbers to do business on Sunday, without including any other class of business.

4. COURTS—*may determine what callings are within police regulation.* It is a judicial question whether a trade or calling is of such a nature as to justify police regulation.

WILKIN, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This was a prosecution begun before a justice of the peace in the city of Chicago, under what is known as the "Cody law," which prohibits, under penalty, the keeping open of any barber shop on Sunday. An appeal was taken from the judgment of the justice of the peace convicting and fining the defendant. In the Criminal Court of Cook county the case was, on appeal, tried *de novo* before Hon. John Gibbons, without a jury. In deciding the case the trial judge, after discussing extensively the statute and holding it to be unconstitutional, said: "While I am irresistibly led to the conclusion that the law in question is void, I am, notwithstanding, anxious that the question should be decided and finally settled by the Supreme Court; and as the defendant may, and the State cannot, appeal, the judgment of the court is that William S.

---

*The constitutionality of Sunday laws, when general or uniform in their application, is fully established by a long line of decisions found in a note to *Judefind* v. *State*, (Md.) 22 L. R. A. 721.

Eden be fined the sum of $25 and costs, and that judgment be and the same is entered accordingly." From that judgment the present appeal is prosecuted.

BURNHAM & BALDWIN, for plaintiff in error:

Neither the common law nor any general statute of the State of Illinois prohibits the pursuit of one's ordinary labor, business or calling, in a quiet manner, on Sunday. *Richmond* v. *Moore*, 107 Ill. 429; *State* v. *Brooksbank*, 6 Ired. 73; *Rex* v. *Brotherton*, 1 Strange, 702; *Comyns* v. *Boyer*, Cro. Eliz. 485; *Sayles* v. *Smith*, 12 Wend. 57; *Drury* v. *Defontaine*, 1 Taunt. 131.

Any legislation which is not general in its scope, and which affects only one class or body of citizens, is in conflict with the spirit of this government and with the constitutions of the United States and of this State. *Calder* v. *Bull*, 3 Dall. 386 ; Const. of U. S. 14th amendment; Const. of Ill. 1870, art. 2, sec. 2, and art. 4, sec. 22; *Ritchie* v. *People*, 155 Ill. 98; *In re Jacobs*, 98 N. Y. 98; *Low* v. *Printing Co.* 41 Neb. 127; *Ex parte Westerfield*, 55 Cal. 550; *Butchers' Union Co.* v. *Crescent Cy. Co.* 111 U. S. 746 ; *Millett* v. *People*, 117 Ill. 294; *Frorer* v. *People*, 141 id. 171; *Ramsey* v. *People*, 142 id. 380; *Coal Co.* v. *People*, 147 id. 66; *People* v. *Gillson*, 109 N. Y. 389; *State* v. *Goodwill*, 33 W. Va. 179; *State* v. *Loomis*, 115 Mo. 307; *Railroad Co.* v. *Jacksonville*, 67 Ill. 37; *Johnson* v. *Railroad Co.* 43 Minn. 223; Cooley's Const. Lim. 393; *Railroad Co.* v. *Baty*, 6 Neb. 37; *Godcharles* v. *Wigeman*, 113 Pa. St. 431.

Where the ostensible object of an enactment is to secure the public comfort, welfare or safety, it must appear to be adapted to that end. It cannot invade the rights of persons and property under the guise of a police regulation when it is not such in fact. *Ritchie* v. *People*, 155 Ill. 98; *Lake View* v. *Cemetery Co.* 70 id. 191; *Railroad Co.* v. *Jacksonville*, 67 id. 37; *People* v. *Gillson*, 109 N. Y. 389; *Millett* v. *People*, 117 Ill. 296; *Calder* v. *Bull*, 3 Dall. 386; *In re Jacobs*, 98 N. Y. 109.

M. T. MOLONEY, Attorney General, (T. J. SCOFIELD and M. L. NEWELL, of counsel,) S. P. SHOPE, THOMAS H. GAULT, and OTTO C. EIGHOLZ, for defendant in error:

Statutes of this character have been enacted in order that the great mass of the people might enjoy and observe the day as conscience and inclination might dictate, free from labor themselves and undisturbed by secular pursuits by others, and have been generally sustained as constitutional enactments. *Scales* v. *State,* 47 Ark. 476; *Johnston* v. *State,* 78 Ind. 332; *Commonwealth* v. *Has,* 122 Mass. 40; *Liberman* v. *State,* 26 Neb. 464; *Commonwealth* v. *Wolff,* 3 S. & R. 348; *Frolickstein* v. *Mobile,* 40 Ala. 725; *Cincinnati* v. *Rice,* 15 Ohio, 225; Cooley's Const. Lim. 725.

The passage of laws intended to require the cessation of labor upon Sunday is, in proper cases, a legitimate exercise of the police power of the State. Tiedeman on Lim. of Police Power, 180; *State* v. *Railroad Co.* 15 W. Va. 362; Cooley's Const. Lim. 596, and authorities; *McPherson* v. *Chebanse,* 114 Ill. 46; *Richmond* v. *Moore,* 107 id. 429.

When a calling or vocation becomes injurious to the public or tends to its injury is a question which the legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion, which cannot be controlled by the courts. Cooley's Const. Lim. (6th ed.) 153, 154.

Unless the act under consideration is void, as being repugnant to the constitution, it must be held to be a valid enactment and enforced by the courts. Cooley's Const. Lim. 201-204; *People ex rel.* v. *Gaulter,* 149 Ill. 39, and cases cited.

It is not an objection that the statute is not general and applies only to a class of persons, where it applies to all who are similarly circumstanced or engaged. *People* v. *Wright,* 70 Ill. 138; *Hawthorne* v. *People,* 109 id. 302.

The same principle was applied and the law sustained, and a like ruling will be found, in *People* v. *Hazlewood,* 116 Ill. 359, and *Railroad Co.* v. *Wallace,* 136 id. 91.

Where an ordinance provided that no person owning or employed in a public laundry or public wash-house, within certain prescribed limits, should wash or iron clothes between the hours of ten in the evening and six in the morning, or upon Sunday, it was held that the ordinance was not void, upon the ground that it discriminated between those engaged in the laundry business and those engaged in other business. *Soon Hing* v. *Crowley*, 113 U. S. 703.

Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement that comes from uninterrupted labor. *People* v. *Bellet*, 99 Mich. 152.

If the laws be otherwise unobjectionable, all that can be required in this case is, that they be general in their application to the class or locality to which they apply. They are then public in character, and of their propriety and policy the legislature must be the judge. *Liberman* v. *State*, 26 Neb. 464; *Cincinnati* v. *Rice*, 15 Ohio, 225; Tiedeman on Lim. of Police Power, 161; Cooley's Const. Lim, (6th ed.) 584.

It has everywhere been held, where cases have arisen, that shaving, etc., of a customer is not a work of necessity. *Commonwealth* v. *Jacobus*, 15 Cent. L. J. 148; *State* v. *Frederick*, 45 Ark. 347.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Plaintiff in error was convicted in the Criminal Court of Cook county for the violation of an act to prohibit barber shops from being kept open on Sunday, and for a violation of the law he was fined $25. The act was passed at the last session of the legislature, and contained two sections, as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly*, That it shall be

unlawful for any person or persons to keep open any barber shop, òr carry on the business of shaving, hair-cutting or tonsorial work, on Sunday, within this State.

"Sec. 2. Any person, by himself, agent or employee, violating the provisions of section 1 of this act, shall, upon conviction thereof, be fined in any sum not exceeding two hundred ($200) dollars for each and every offense."

. It is contended in the argument that by the act in question that part of the fourteenth amendment to the United States constitution (sec. 1) has been violated which reads as follows : "Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." It is also contended that the act violates section 2 of article 2 of the Illinois constitution of 1870, viz., "no person shall be deprived of life, liberty or property without due process of law," and also section 22 of article 4, the general clause of which reads, "in all other cases where a general law can be made applicable no special law shall be enacted." It is conceded in the argument that if the legislature had enacted a law prohibiting all business on Sunday its validity could not be questioned,—that such a law would violate none of the constitutional provisions relied upon.

The common law of England, as adopted in this State as a part of our jurisprudence, does not prohibit the citizen from pursuing his ordinary labor on Sunday, nor is a contract entered into between two parties in this State void because executed on Sunday. (*Rex* v. *Brotherton*, 1 Strange, 702; *Drury* v. *Defontaine*, 1 Taunt. 131; *Sayles* v. *Smith*, 12 Wend. 57; *Richmond* v. *Moore*, 107 Ill. 429.) On the other hand, at common law Sunday has always been regarded *dies non juridicus*, —a day upon which courts could not transact other than necessary or ministerial business. In England, however, the law which permitted the transaction of business and the pursuit of one's ordinary labor was changed by statute, (29 Car. II,) which

provides that "no tradesman, artificer, workman, laborer or other person whatsoever shall do or exercise any worldly business or work on the Lord's day," works of necessity and charity being excepted. This statute has been substantially adopted by the legislatures of many of the States in the Union. This State has not, however, followed the other States in the adoption of the English statute, but we have legislated on this subject for ourselves in a manner thought to be for the best interest of our people. That legislation will be found in paragraph 261 of our Criminal Code, as follows: "Whoever disturbs the peace and good order of society by labor, (works of necessity and charity excepted,) or by any amusement or diversion, on Sunday, shall be fined not exceeding $25. This section shall not be construed to prevent watermen and railroad companies from landing their passengers, or watermen from loading and unloading their cargoes, or ferrymen from carrying over the water travelers and persons moving their families, on the first day of the week, nor to prevent the due exercise of the rights of conscience by whomever thinks proper to keep any other day as a Sabbath." The preceding paragraph (260) provides: "Sunday shall include the time from midnight to midnight."

There is a wide and well-marked distinction between the English statute and ours. The English statute prohibits labor and business on Sunday, while our statute merely prohibits labor and amusement which disturbs the peace and good order of society. In *Richmond* v. *Moore*, *supra*, in speaking of the difference between the two statutes, it is said (p. 433): "A mere glance at that and our statute will show that they are materially different. That prohibits labor and business; ours only prohibits labor or amusement that disturbs the peace and good order of society. The offense by that statute is the performance of labor or business, and by ours it is the disturbance of the peace and good order of society.

The British statute is much more comprehensive in its purposes and language than ours. • Ours only prohibits labor that disturbs the peace and good order of society, not naming business, whilst the British statute renders the mere act of labor or business penal."

Under the law of this State as it existed prior to the passage of the act in question, each and every citizen of the State was left perfectly free to labor and transact business on Sunday or refrain from labor and business, as he might choose, so long as he did not disturb the peace and good order of society. By the act in question an attempt has been made by the legislature to inaugurate a radical change in the law as to a class of the laboring element of the State,—the barbers. The statute, as has been seen, declares "that it shall be unlawful for any person or persons to keep open any barber shop, or carry on the business of shaving, hair-cutting or tonsorial work, on Sunday." That act is plain and its meaning is obvious. The owner of a place where is carried on the barber business is prohibited from doing any business whatever during one day in the week. He may have in his employ a dozen men, and yet during one day in seven he is deprived of their labor and also deprived of his own labor. The income derived from his place, and his own labor and the labor of his employees, are his property, but the legislature has by the act taken that property from him. The journeyman barber who works by the day or the week, or for a share of the amount he may receive from customers for his services, is by the law denied the right of laboring one day in the week. He may rely solely upon his labor for the support of himself and family; his labor may be the only property that he possesses, and yet this law takes that property away from him. His labor is his capital, and that capital is all the property he owns. Can a law which takes that from the laborer be sustained?

The constitution of the United States says the State shall not deprive any person of property without due process of law, and our State constitution declares the same thing. What is understood by the term "due process of law" is not an open question. "Due process of law" is synonymous with "law of the land," and "the law of the land" is "general public law, binding upon all the members of the community, under all circumstances, and not partial or private laws, affecting the rights of private individuals or classes of individuals." (*Millett* v. *People*, 117 Ill. 294.) Is the act in question a law binding upon all the members of the community? A glance at its provisions affords a negative answer. The act affects one class of laborers, and one class alone. The merchant and his clerks, the restaurant keeper with his employees, the clothing house proprietor, the blacksmith, the livery stable keeper, the owners of street car lines, and people engaged in every other branch of business, are each and all allowed to open their respective places of business on Sunday and transact their ordinary business if they desire, but the barber, and he alone, is required to close his place of business. The barber is thus deprived of property without due process of law, in direct violation of the constitutions of the United States and of this State.

In *Millett* v. *People*, *supra*, the validity of an act of the legislature requiring owners and operators of coal mines to weigh coal in a certain specified manner arose, and it was held not competent for the legislature to single out owners and operators of coal mines and provide that they should bear burdens not imposed on other owners of property or employers of labor, and prohibit them from making contracts which it is competent for other owners of property or employers of labor to make, and that such legislation cannot be sustained as an exercise of the police power.

In *Frorer* v. *People*, 141 Ill. 171, where the validity of an act of the legislature arose which prohibited persons

engaged in mining or manufacturing from keeping stores for furnishing supplies, tools, clothing, provisions or groceries to their employees while so engaged in mining or manufacturing, the law was held to be in conflict with the constitution. In the decision of the case it is among other things said (p. 180): "The privilege or liberty to engage in or control the business of keeping and selling clothing, provisions, groceries, tools, etc., to employees, is one of profit,—of presumptive value; and thus, by the effect of these sections, what the employers in other industries may do for their pecuniary gain with impunity, and have the law to protect and enforce, the miner and manufacturer, under precisely the same circumstances and conditions, are prohibited from doing for their pecuniary gain. The same act, in substance and in principle, if done by the one is lawful, but if done by the other is not only unlawful, but a misdemeanor. * * * The privilege of contracting is both a liberty and a property right, and if A is denied the right to contract and acquire property in a manner which he has hitherto enjoyed under the law, and which B, C and D are still allowed by the law to enjoy, it is clear that he is deprived of both liberty and property to the extent that he is thus denied the right to contract."

In *Ramsey* v. *People*, 142 Ill. 380, the case last cited was quoted with approval, and it was held that the act of 1881, which requires the owners and operators of coal mines, when the miner is paid on the basis of the amount of coal mined and delivered by him, to weigh the coal on pit cars before it is screened, and to pay on such weights, is in violation of section 2 of article 2 of the State constitution, as depriving a class of persons of the liberty and property right of making contracts without due process of law.

In *Braceville Coal Co.* v. *People*, 147 Ill. 66, the question of the validity of an act of the legislature arose which required certain specified corporations to pay their em-

ployees their wages weekly. It was held that as the act was applicable only to certain corporations, and did not operate upon all corporations for pecuniary profit, and individuals, it was unconstitutional, as depriving the corporations affected thereby of the right of liberty and property without due process of law. In speaking of the term "liberty," as used in the constitution, it is there said (p. 70): "There can be no liberty protected by government that is not regulated by such laws as will preserve the right of each citizen to pursue his own advancement and happiness in his own way, subject only to the restraints necessary to secure the same right to all others. The fundamental principle upon which liberty is based in free and enlightened government is equality under the law of the land. It has accordingly been everywhere held that liberty, as that term is used in the constitution, means not only freedom of the citizen from servitude and restraint, but is deemed to embrace the right of every man to be free in the use of his powers and faculties, and to adopt and pursue such avocation or calling as he may choose, subject only to the restraints necessary to secure the common welfare."

In *Ritchie* v. *People*, 155 Ill. 98, the question arose in regard to the validity of a statute which provided that no female shall be employed in any factory or workshop more than eight hours in any one day or forty-eight hours in any one week, and it was held that the right to labor or employ labor, and make contracts in respect thereto, upon such terms as may be agreed upon, is both a liberty and a property right, and is included in the guaranty of section 2 of article 2 of the constitution, and that the act prohibiting the employment of females in any factory or workshop for more than eight hours a day is unconstitutional, as being partial and discriminating in its character. In the decision of the case it is said (p. 104): "Labor is property, and the laborer has the same right to sell his labor and to contract with refer-

161—20

ence thereto as has any other property owner. In this country the legislature has no power to prevent persons who are *sui juris* from making their own contracts, nor can it interfere with the freedom of contract between the workman and the employer."

If the legislature has no power to prohibit, by law, a woman from being employed in a factory or workshop more than eight hours in any one day or forty-eight hours in a week, upon what principle, it may be asked, has the legislature the right to prohibit a barber from laboring and receiving the fruits of his labor during any number of hours he may desire to work during the week? If a woman may be allowed to determine the number of hours she may work in a week, why not allow a barber the same right? Moreover, if the merchant, the grocer, the butcher, the druggist, and those engaged in other trades and callings, are allowed to open their places of business and carry on their respective avocations during seven days of the week, upon what principle can it be held that a person who may be engaged in the business of barbering may not do the same thing? Why should a discrimination be made against that calling, and that alone?

But it is said the law may be sustained under the police power of the State. In Tiedeman on Limitation of Police Powers the author (sec. 85) says: "The State, in the exercise of its police power, is, as a general proposition, authorized to subject all occupations to a reasonable regulation, where such regulation is required for the protection of the public interest or for the public welfare. It is also conceded that there is a limit to the exercise of this power, and that it is not an unlimited, arbitrary power, which would enable the legislature to prohibit a business the prosecution of which inflicts no damage upon others." The author also lays down the rule that it is within the discretion of the legislature to institute such regulations when a proper case arises. But

it is a judicial question whether the trade or calling is of such a nature as to justify police regulation.

In *Millett* v. *People, supra,* in speaking of the police powers of the State as applicable to the case then before the court, it is said (p. 303): "Their requirements have no tendency to insure the personal safety, of the miner, or to protect his property or the property of others. They do not meet Dwarris' definition of police regulations. They do not have reference to the comfort, the safety or the welfare of society. (Potters' Dwarris on Stat. 458.) In *Austin* v. *Murray,* 16 Pick. 121, it was said: 'The law will not allow the rights of property to be invaded under the guise of a police regulation for the promotion of health, when it is manifest that such is not the object and purpose of the regulation.' See, also, *Waterman* v. *Mayo,* 109 Mass. 315, and cases referred to in *Matter of Application of Jacobs,* 98 N. Y. 109."

In Cooley's Constitutional Limitations, (sec. 484,) in speaking in reference to a regulation made for one class of citizens, it is said: "Distinctions in these respects must rest upon some reason upon which they can be defended,—like the want of capacity in infants and insane persons; and if the legislature should undertake to provide that persons following some specified lawful trade or employment shall not have capacity to make contracts or receive conveyances,  *  *  *  or in any other way to make such use of their property as was permissible to others, it can scarcely be doubted that the act ·would transcend the bounds of legislative power, even though no express constitutional provision could be pointed out with which it would come in conflict."

It will not and cannot be claimed that the law in question was passed as a sanitary measure, or that it has any relation whatever to the health of society. As has been heretofore seen, as a general rule a police regulation has reference to the health, comfort, safety and welfare of society. How, it may be asked, is the health, comfort,

safety or welfare of society to be injuriously affected by keeping open a barber shop on Sunday? It is a matter of common observation that the barber business, as carried on in this State, is both quiet and orderly. Indeed, it is shown by the evidence incorporated in the record that the barber business, as conducted, is quiet and orderly,—much more so than many other departments of business. In view of the nature of the business and the manner in which it is carried on it is difficult to perceive how the rights of any person can be affected or how the comfort or welfare of society can be disturbed. If the act were one calculated to promote the health, comfort, safety and welfare of society, then it might be regarded as an exercise of the police power of the State. In *Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville,* 67 Ill. 37, it was held that if the law prohibits that which is harmless in itself, or requires that to be done which does not tend to promote the health, comfort, safety or welfare of society, it will in such case be an unauthorized exercise of power, and it will be the duty of the courts to declare such legislation void. In *Ritchie* v. *People, supra,* in speaking of the police power of the State, the court said (p. 110): "The police power of the State is that power which enables it to promote the health, comfort, safety and welfare of society. It is very broad and far-reaching, but is not without its limitations. Legislative acts passed in pursuance of it must not be in conflict with the constitution, and must have some relation to the ends sought to be accomplished,—that is to say, to the comfort, welfare or safety of society. Where the ostensible object of an enactment is to secure the public comfort, welfare or safety, it must appear to be adapted to that end. It cannot invade the rights of person and property under the guise of a mere police regulation, when it is not such in fact; and where such an act takes away the property of a citizen or interferes with his personal liberty, it is the province of the courts to determine whether

it is really an appropriate measure for the promotion of the comfort, safety and welfare of society."

We do not, therefore, think the law was authorized by the police power of the State. If the public welfare of the State demands that all business and all labor of every description, except works of necessity and charity, should cease on Sunday, the first day of the week, and that day should be kept as a day of rest, the legislature has the power to enact a law requiring all persons to refrain from their ordinary callings on that day. (Cooley's Const. Lim. 725.) All will then be placed on a perfect equality, and no one can complain of an unjust discrimination. But when the legislature undertakes to single out one class of labor harmless in itself, and condemn that and that alone, it transcends its legitimate powers, and its action cannot be sustained.

The judgment will be reversed.

*Judgment reversed.*

Mr. JUSTICE WILKIN, dissenting.