CARL ROGERS, Defendant Below, Appellant, v. STATE OF DELAWARE, Plaintiff Below, Appellee.

(*April* 9, 1964.)

TERRY, Chief Justice, CAREY, Justice, and STOREY, J., specially assigned.

*Edward W. Cooch, Jr.,* and *H. Alfred Tarrant, Jr.* (of

Cooch and Taylor) for appellant.

*Thomas Herlihy, III,* Chief Deputy Attorney General, and *Merrill C. Trader,* Deputy Attorney General, for the State.

Supreme Court of the State of Delaware, No. 55, 1963.

CAREY, Justice.

The defendant appeals from a finding of guilt in the Superior Court upon a charge of barbering on Sunday in violation of 24 *Del. C.* § 415. He challenges the constitutionality of the statute, which reads as follows:

"Whoever carries on or engages in the business of shaving, haircutting or other work of a barber, or whoever opens or allows to be open his barber shop or place where such business is done, for the purpose of carrying on his said business on the first day of the week, commonly called Sunday, shall be guilty of a misdemeanor \* \* \*".

The Court below held the challenged section constitutional. See *State v. Rogers,* Del.Super., 180 A.2d 735.

The facts have been stipulated to be these: Defendant, a barber and beautician, operated a barbershop at the New Castle Farmers Market on Friday and Saturdays from 12 noon to midnight and on Sundays from 12 noon to six P.M. His barbershop was his only source of income. He had a steady clientele on Sundays. He was arrested on Sunday, January 14, 1962 at his place of business. At the time of his arrest, a beauty shop was open and operating at the Farmers Market.

Appellant contends that the section quoted above violates the due process and the equal protection clauses of the Fourteenth Amendment to the Federal Constitution

as well as Art. 1, Sec. 7 of the Delaware Constitution, *Del. C.* Part of his argument is based upon 24 *Del. C.* § 401 reading in part as follows:

"As used in this chapter ⁂ ⁂ ⁂ '[p]racticing the occupation of barber' includes the shaving or trimming of the beard and the cutting of the hair of any person for hire or reward, provided that this chapter shall not apply to beauticians cutting or trimming the hair of females."

The sole issue presented by this appeal is whether, in the absence of a general Sunday closing law, a statute singling out barbers (excluding beauticians) and requiring them to close their establishments on Sunday is an arbitrary and discriminatory exercise of the police power and therefore unconstitutional.

Contrary to the situation in some states, Delaware has no general Sunday closing law which applies equally to retail businesses, labor or other activities. We do have a few individual statutes prohibiting or restricting a few activities on Sunday, such as the sale of alcoholic liquor, games of bingo, and certain public entertainment. General Sunday closing statutes have, of course, been upheld by the Supreme Court of the United States, even though they may contain certain exceptions. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; *Two Guys From Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551.

In some jurisdictions, statutes requiring barbers to close on Sundays have been upheld, even though there was no general Sunday closing law. *People v. Havnor,* 149 N.Y. 195, 43 N.E. 541, 31 L.R.A. 689; *Ex parte Northrup,* 41 Or. 489, 69 P. 445; *State v. Bergfeldt,* 41 Wash. 234, 83 P. 177. In other jurisdictions, however, the contrary view has been taken and statutes aimed only at barber-

shops were held discriminatory, arbitrary and unreasonable in the absence of a general Sunday closing law. *Ex parte Jentzsch,* 112 Cal. 468, 44 P. 803, 32 L.R.A. 664; *Eden v. People,* 161 Ill. 296, 43 N.E. 1108, 32 L.R.A. 659; *City of Miami v. Shell's Super Store, Inc.,* Fla., 50 So.2d 883; *Chaires v. Atlanta,* 164 Ga. 755, 139 S.E. 559, 55 A.L.R. 230; *State Board of Barber Examiners v. Cloud,* 220 Ind. 552, 44 N.E.2d 972; In re Opinion of the Justices, 337 Mass. 796, 151 N.E.2d 631.

Certain basic principles applicable to cases of this nature are summarized in *Hoff v. State,* 9 W.W.Harr. 134, 39 Del. 134, 197 A. 75, from which we quote:

"To justify the State in interposing its authority in behalf of the public, it must appear that the interests of the public, as distinguished from those of a particular class, demand such interference; that the means employed are reasonably necessary for the accomplishment of the purpose; and that they are not unduly oppressive on individuals. The Legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations; nor is the determination by the Legislature as to what is a proper exercise of its police power final and conclusive. but is subject to supervision by the courts. *Lawton v. Steele,* 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; 6 R.C.L. 241, 2 Cooley Const. Lim. Ch. 16. If, then the means employed are arbitrary and unreasonable, and beyond the necessities of the case, the courts will disregard mere forms. and will interfere for the protection of rights injuriously affected by such illegal action, *Minnesota v. Barber,* 136 U.S. 313, 10 S.Ct. 862, 34 L.Ed. 455; for they may and should look at the substance of things whenever they enter upon the inquiry whether the Legislature has transcended the limits of its

authority. *Mugler v. Kansas,* 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205."

See also *Becker v. State,* 7 W.W.Harr. 454, 37 Del. 454, 185 A. 92 and *State v. Danberg,* 1 Terry 136, 40 Del. 136, 6 A.2d 596.

The Act itself contains no statement of legislative purpose. The State attempts to justify the questioned statute upon two grounds. The first suggestion is that it was designed to promote greater cleanliness, thus improving sanitary conditions. This argument we do not comprehend. We agree that the public interest is served by requiring sanitary conditions in barber shops but it is impossible for us to understand how cleanliness is promoted by closing them on Sundays. Moreover, if this be the purpose of the section, why are beauty shops excluded from its operation? In any event, we cannot believe that § 415 was designed to have anything to do with sanitary conditions, especially in view of the fact that careful provision has been made in other sections of T. 24 *Del. C.* Ch. 4 which are plainly and directly designed to guarantee sanitary conditions through inspections and criminal sanctions.

The other suggestion is that § 415 was passed to insure the barbers a day of rest to protect their health, thus improving the general public health. If this be the purpose, it is apparent that the General Assembly adopted a very indirect or "backhanded" way of accomplishing that aim. Closing the shop on Sunday certainly does not *necessarily* mean shorter hours of work; it could result in longer hours each week-day. Had this been the intent, we would have expected the statute to prescribe a maximum number of hours or days per week for each barber or perhaps each barber shop. As the section is drawn, a shop could remain open 18 hours a day for six days with-

out violating its terms, but another shop (like this one) would be guilty of a violation although it is open only 12 hours a day for two days and 6 hours for a third day.

Another thought which causes us to believe that this matter of health was not the legislative object is the fact that no similar limitation is placed upon beauty shops. We agree that they differ from barber shops in many respects, but we fail to see how the differences so far affect the health of the operators as to require statutory protection for one group but not the other.

Looking at realities, we are convinced that the true purpose of this statutory provision was not to attain greater cleanliness in barbershops or to protect the health of barbers. To paraphrase *Hoff v. State,* supra, the provision was designed not to serve the public but to serve the interest of a part of the trade by restricting competition and abritrarily imposing the wishes and desires of some members of that trade upon others. This belief is substantiated in some degree by the testimony presented by the State.

It is our opinion, therefore, that § 415 constitutes an unjust and unreasonable attempt to discriminate against this class of persons; that its effect is not to benefit the interests of the public; and that it constitutes an arbitrary interference with private business. It is accordingly a violation of both the Fourteenth Amendment of the Federal Constitution and Article 1, Section 7 of the Delaware Constitution.

The decision of the Superior Court must be reversed and the record remanded with instructions to set aside the verdict and sentence and to dismiss the indictment.