**WOONSOCKET PRESCRIPTION CENTER, INC., et al.,**

v.

**Julius MICHAELSON et al.**

**Civ. A. No. 760275.**

United States District Court,
D. Rhode Island.

July 27, 1976.

Michael A. Silverstein, Max Wistow, Merrill W. Sherman, Providence, R. I., for plaintiffs.

Allen P. Rubine, Asst. Atty. Gen., Providence, R. I., for defendants.

## OPINION AND ORDER

PETTINE, Chief Judge.

Plaintiffs, a prescription drug store ("WPC") and one of its employees, Paul Champagne, bring this action seeking declaratory and injunctive relief to enjoin the operation of Rhode Island's Sunday closing laws, as recently amended, R.I.G.L. §§ 5–23–1 through 5–23–6, 11–40–1, 25–1–6, as violative of rights guaranteed to them by the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. Sued in their official capacity, the defendants are state and local officials who are charged with enforcing the various provisions of Rhode Island's Sunday closing statutory scheme.

■ Subject-matter jurisdiction appears to be properly premised on 28 U.S.C. §§ 1331, 2201. *See Panzarella v. Boyle*, 406 F.Supp. 787 (D.R.I.1975). Since plaintiffs challenge statutes of statewide applicability, only a three-judge court may pass upon their request for preliminary and permanent injunctive relief. 28 U.S.C. §§ 2281, 2284. Neither side contends that the merits of plaintiffs' challenge have been squarely resolved by a prior decision of the United States Supreme Court. *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *Doe v. Israel*, 482 F.2d 156, 158 (1st Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 772. The matter is presently before the Court to resolve plaintiffs' request that the Court grant a temporary restraining order and convene a three-judge panel. The following findings of fact are made on the basis of the verified complaint and evidence adduced at a hearing in this matter on July 23, 1976.

I

■ WPC is the largest pharmacy in the City of Woonsocket and is located across the street from the Woonsocket Hospital. It has been open seven days a week since December, 1972, having been duly licensed in accordance with the pre-amendment Sunday closing scheme. On an average Sunday, WPC grosses approximately $2,200 in sales and fills approximately 140 prescriptions. Approximately two-thirds of these are refills of prescriptions currently on file at WPC. WPC contends that many of these refills are of an emergency nature and that its closing on Sundays will require present customers to obtain new prescriptions to be filled and put on file at one of its competitors. The remaining third are new prescriptions. WPC contends that most of these are prescribed by physicians on Sundays to be filled immediately. With WPC closed on Sundays, potential customers will be lost as they fill and file the new prescriptions at one of WPC's open competitors. Since approximately 78% of all new prescriptions, in WPC's recent experience, are refillable, WPC contends that it will lose substantial repeat business as new pre-scriptions are filled elsewhere on Sundays, and as present customers discover that it is more convenient to refill and refile their prescriptions at pharmacies open on Sundays. In addition to this long range impact on its business, WPC claims that it will sustain the more immediate loss of sales presently made on Sunday of nonprescription items to the general public and of pharmaceutical products to nearby Woonsocket Hospital when patient demand exceeds the Hospital's own supply.

Until July 1, 1976, WPC had been operating on Sundays under a license obtained pursuant to the former R.I.G.L. § 5–23–2, which authorized town councils to grant licenses "for the sale by retail dealers . . . of prescriptions, patent medicines, drugs, hospital supplies," and other items typically sold in a drugstore. Effective July 1, 1976, R.I.G.L. §§ 5–23–1 through 5–23–5 were amended to eliminate the commodity exemption to the general prohibition of Sunday work which is contained in R.I.G.L. §§ 11–40–1 [1] and 25–1–6. [2] Instead of an exemption based upon the type of items sold, § 5–23–2 now authorizes Sunday li-

---

1. R.I.G.L. § 11–40–1 provides:

"*11–40–1. Work or recreation on Sunday prohibited.*—Except as provided in §§ 5–22–6 to 5–22–11, inclusive, every person who shall do or exercise any labor or business or work of his ordinary calling, or use any game, sport, play or recreation on the first day of the week, or suffer the same to be done or used by his children, servants or apprentices, works of necessity and charity only excepted, shall be fined not exceeding five dollars ($5.00) for the first offense and ten dollars ($10.00) for the second and every subsequent offense; provided, further, however, that the above prohibitions shall not apply to any person or persons operating or functioning under a valid permit or license."

2. R.I.G.L. § 25–1–6, as amended in 1976, provides:

"No person, firm or corporation shall require or permit an employee to work and no person shall engage in gainful activities in any store . . . or in any commercial occupation . . . on Sundays or any of the following holidays, to wit, New Year's day, . . . [etc.] . . .; provided, however, that nothing herein contained shall prohibit the director of labor from granting a permit to perform such work upon written application therefor at least ten (10) days previous to the Sunday or holiday therein referred to or for less time as the necessity of the occasion may require in the discretion of the director of labor, which application shall contain a sworn statement by or on behalf of such person, firm or corporation of the particular necessity to perform such work and the economic hardship which would otherwise prevail as declared in said applications."
The enforcement provisions for this section are contained in §§ 25–1–7 and 25–1–8, which provide:
"[25–1–7] Any person, firm or corporation convicted of violating any of the provisions of § 25–1–6 shall be punished by a fine of twenty-five dollars ($25.00) for each employee involved and each separate offense committed but in no event shall the fine be less than two hundred dollars ($200.)."
"[25–1–8] The department of labor shall enforce and administer the provisions of §§ 25–1–6 and 25–1–7. All actions, suits, complaints and prosecutions for the violation of any of the provisions of said sections shall be brought by and in the name of the director of labor or his duly authorized representatives."

censes to be granted to all retail establishments,[3] regardless of commodities sold,

"at which in each calendar week of full time operation of the three calendar months immediately preceding the date of application for such license, no more than an average of eighty (80) hours of employment per day is provided in the aggregate for all employees on the premises of such retail establishment including hours worked by employees of concessionaires, which average and aggregate shall be maintained during the term of the license; computation of hours of employment shall also include time spent in the performance of work by the owner or proprietor and members of his family. Said business shall be exempt from the provisions of chapter 11–40 entitled 'Sunday laws' and chapter 25–1 entitled 'Holidays and days of special observance,' and may sell any and all items sold in the ordinary course of business with the exception of alcoholic beverages."

Section 5–23–2 further provides that this provision, hereinafter referred to as the "maximum hours limitation," does not apply to "[r]etail establishments engaged in the preparation and/or sale of bakery products . . . [or] in the sale of plants, shrubs, trees, fertilizer, seeds, bulbs, and gardening accessories, including any concession operated by or on the premises of a larger establishment." In addition, § 5–

23–2 permits all retail establishments, regardless of aggregate daily hours of employment, to "open for any purpose except for the sale of alcoholic beverages without obtaining a license on those Sundays between Thanksgiving Day and Christmas Day." [4]

WPC does not meet the maximum hours limitation nor any of the exceptions thereto and thus is not eligible to obtain a license to operate on Sundays under the amended scheme. Upon advice of the Woonsocket city solicitor and the office of the Rhode Island Attorney General that its license to operate on Sundays under the former § 5–23–2 was no longer valid and that continued Sunday operation would subject it to criminal prosecution under the new law, R.I.G.L. § 5–23–6,[5] WPC filed the within action and ceased Sunday operations as of July 18, 1976. In view of the foregoing circumstances, the Court concludes that WPC has demonstrated both injury in fact and threat of prosecution under chapter 5–23 sufficient to meet the "standing" and "ripeness" requirements for a justiciable controversy. *See Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Roe v. Wade*, 410 U.S. 113, 124, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *See also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

■ The Court does not reach similar conclusions as to WPC's constitutional chal-

---

**3.** "The term 'retail establishment' whenever used in this chapter shall be deemed to include as a separate establishment each noncontiguous retail establishment and specifically shall include for the purposes of this chapter all businesses specifically including concessions conducted in such noncontiguous retail establishment. This definition shall not include victualing houses serving prepared food for consumption on and off the premises, including those houses licensed under chapter 5–24."

R.I.G.L. § 5–23–1, as amended effective 7/1/76.

**4.** As to all Sunday employment permitted under § 5–23–2,

"the work so performed by the employee shall be strictly voluntary and refusal to work for any retail establishment on Sunday or holiday shall not be a ground for discrimi-

nation, dismissal or discharge or any other penalty upon the employee." *Id.*

**5.** R.I.G.L. § 5–23–6, entitled "Enforcement–Penalties" in pertinent part provides:

"(B) Every such licensed or *unlicensed* person, firm or corporation, including officers and officials thereof, who shall violate any of the provisions of such license or the provisions of this chapter, except as set forth in subparagraph (A) of this section, shall be fined not exceeding $500 for the first offense and not exceeding $1,000 for each additional offense.

(C) Except as otherwise provided in subparagraphs (A) and (B) of this section, suit for violation of the provisions of this chapter, praying for injunctive or other relief, criminal or civil, may be instituted in the superior court by any city or town or by the attorney general."

(Emphasis supplied.)

lenge to R.I.G.L. §§ 11–40–1 and 25–1–6 or to plaintiff Champagne's suit in its entirety. The complaint contains no allegation that plaintiff Champagne has engaged or proposes to engage in any conduct in violation of the Sunday closing laws, a completely understandable omission in view of WPC's cessation of Sunday operations, nor can any threat or genuine fear of prosecution of Champagne be fairly discerned from the allegations of the complaint. *See* note 7, *infra.*

■ The Court is similarly unimpressed with WPC's attack on R.I.G.L. § 11–40–1. The annotations to this relic of Rhode Island's colonial heritage, *cf. Gallagher v. Crown Kosher Super Market*, 366 U.S. 617, 627, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961), reveal that the Rhode Island Supreme Court has not passed upon chapter 11–40 in any respect since 1928. There is nothing in the record to suggest that § 11–40–1 has been used in modern times to prosecute "Sabbath-breakers", *see Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), or is relied upon by the defendants as a source for their threatened prosecution of WPC. *Cf. Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Unlike many states, which have "modified, deleted from and added to their Sunday statutes . . . evolv[ing] from the wholly religious sanctions that originally

were enacted," *McGowan v. Maryland*, 366 U.S. 420, 435, 81 S.Ct. 1101, 1110, 6 L.Ed.2d 393 (1961), Rhode Island appears to have devoted its attention to supplanting § 11–40–1 with chapters 5–23 and 25–1, both amended this session, and both reflecting modern considerations in mandating premium wages for Sunday work and in facilitating effective enforcement by authorizing the issuance of injunctions to prevent future abuses and the imposition of substantial fines to remove the profit motive encouraging violation. Thus, WPC's challenge to § 11–40–1 satisfies neither the "standing" nor "ripeness" components for a justiciable issue. *Rodos v. Michaelson*, 527 F.2d 582, 584 (1st Cir. 1976). *See* note 7, *infra.*

■ WPC also attacks the allegedly standardless discretion which R.I.G.L. § 25–1–6, as amended in 1976, vests in the State Director of Labor in granting permits for Sunday work. *See* note 2, *supra.* The complaint, however, contains neither allegation that WPC has ever applied for such a permit nor that following the application procedure would in any event be futile.[6] This aspect of WPC's complaint is not "ripe" for adjudication.[7] *See Raper v. Lucey*, 488 F.2d 748, 751 n. 3 (1st Cir. 1973) (re: 42 U.S.C. § 1983); *Panzarella v. Boyle, supra* at 794.

**6.** Defendants argue that WPC has no standing to challenge § 25–1–6 because it does not apply to retail establishments. Although the Director of Labor might reasonably decline to issue a Sunday work permit to retail establishments in view of the comprehensive scheme of chapter 5–23, the Court does not read § 25–1–6 as mandating that conclusion. Section 25–1–6 contains a general prohibition of work on Sundays and holidays "in gainful activities in any *store* . . . or in any commercial occupation" by any "person, firm or corporation." The section then authorizes the Director of Labor to grant a permit "to perform such work" to "such person, firm or corporation," in his discretion, upon a showing of "the particular necessity to perform such work and the economic hardship which would otherwise prevail." It does not exceed the bounds of reason to construe "store" to include retail stores or to recognize that such a store might be able to demonstrate such "particular necessity" and

"economic hardship" to convince the Director to grant a Sunday work permit. However, WPC has not attempted to do so and its complaint about the actions and/or exercise of authority by the Director is premature.

**7.** It should be noted that the Court makes its findings as to "standing" and "ripeness" for purposes of passing upon the request for temporary injunctive relief only. The Court is aware of its authority to pass upon these issues with finality while sitting as a single judge, *Gonzales v. Automatic Employees Credit Union*, 419 U.S. 90, 100, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974). However, since a three-judge court must in any event be convened, the Court deems it appropriate to leave final resolution of these matters open for consideration by that panel. *Cf. Berrios v. Inter American University*, 535 F.2d 1330, 1331 n. 2 (1st Cir. 1976).

## II

This Court has often explored the criteria for issuance of a temporary restraining order. *See, e. g., Palmigiano v. Travisono,* 317 F.Supp. 776 (D.R.I.1970). In this case WPC has demonstrated that it will suffer irreparable injury if it cannot open on Sundays and that only injunctive relief will preserve the status quo. In balancing the harm to the parties, the Court notes that WPC has not alleged that its solvency is even remotely jeopardized by closing on Sundays. On the other side of the scales is the state's undeniable interest, on behalf of the public at large, in promoting a common day of rest and tranquility. *See McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); *Gallagher v. Crown Kosher Super Market,* 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961). The scales do not tip decidedly in favor of WPC. As a result, WPC's likelihood of success on the merits remains an important factor. *Cf. Palmigiano v. Travisono, supra* at 787. We turn to that inquiry now.

As reduced in Part I, *ante,* two issues remain before the Court for a determination of the likelihood that WPC will succeed on their merits. First, WPC claims that R.I.G.L. § 5–23–6(B), *quoted in* note 5, *supra,* is void for vagueness under the Due Process Clause; and, second, WPC contends that the classifications created by the statutory exemptions to the overall Sunday work prohibition constitute an invidious discrimination against it in violation of the Equal Protection Clause.

## III

Since chapter 5–23 relates only to the granting of licenses and does not by its own terms *prohibit* Sunday operations, but rather constitutes an exemption from the general Sunday work prohibitions of chapters 11–40 and 25–1, *see* R.I.G.L. § 5–23–2, as amended, WPC argues that "it is difficult to understand precisely how a non-licensee can violate the provisions" of *this* chapter. WPC therefore attacks this chapter under the Due Process Clause as void for vagueness.

"[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), *quoted in Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939). *See also Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

Defendants contend that WPC is making a hypertechnical argument, since it had no trouble in reaching the conclusion that opening on Sunday would not conform to the requirements of chapter 5–23 and the general statutory scheme. Defendants further contend that the enforcement provisions of chapter 5–23 may fairly be construed to apply only and to all "retail establishments" as defined in § 5–23–1 regardless of compliance with the maximum hours limitation and that the reference in § 5–23–6(B) to "unlicensed" persons, etc., would be construed to refer to retail establishments which open on Sundays despite noncompliance with the provisions of § 5–23–2. Since statutory construction of this nature is within the exclusive province of the state courts, defendants urge that this Court abstain, *see, e. g., Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940), and certify the issue to the Rhode Island Supreme Court pursuant to Rule 6, Rules of the Supreme Court of Rhode Island. *See Bellotti v. Baird,* —— U.S. ——, ——, 96 S.Ct. 2857, 2866, 49 L.Ed.2d ——, 44 U.S.L.W. 5221, 5226 (1976).

Defendants quite correctly acknowledge, however, that the decision to abstain can only be made by the three-judge court. *Apel v. Murphy,* 526 F.2d 71 (1st Cir. 1975). Thus the question of interim injunctive relief remains before this Court. *See Catrone*

*v. Massachusetts State Racing Comm'n,* 535 F.2d 669 (1st Cir. 1976).

Although there is a good deal of ambiguity in the statutory scheme, *see also* note 6, *supra,* the Court does not consider temporary injunctive relief to be appropriate on grounds of vagueness. First, the likelihood of WPC's success on the merits is an open question: the construction urged by defendants does not seem unreasonable. *See, e. g., Angel v. Murray,* 113 R.I. 482, 322 A.2d 630 (1974); *State v. Lemme,* 104 R.I. 416, 244 A.2d 585 (1968). Second, the general prohibition of Sunday labor is manifestly clear in § 25–1–6. Even if the enforcement provision of chapter 5–23, § 5–23–6(B), cannot be construed to apply to a retail establishment which is not licensed thereunder, that establishment would still be barred from operating on Sundays, absent a permit or other statutory exemption, by § 25–1–6. If the Court were to grant injunctive relief on grounds of vagueness, it would in effect authorize WPC to disregard the outstanding prohibition of § 25–1–6, whose validity, *see* Part I, *ante,* remains unchallenged. This is not an appropriate exercise of the Court's equitable powers. *Cf. Rhode Island Committee on Energy v. General Services Administration,* 411 F.Supp. 323 (D.R.I.1976).

## IV

### A

In a series of four decisions, cited in full in Part II, *ante,* the Supreme Court rejected constitutional challenges based on the Equal Protection Clause to the Sunday closing laws of Maryland, Pennsylvania and Massachusetts. These statutory schemes differed in their particulars, but shared in common a basic Sunday work prohibition which had been shot so full of holes to accommodate exceptions based on commodity or type of activity as to resemble a practice target. The three-judge court which had sustained plaintiffs' challenge in *Gallagher* had described Massachusetts' statutory scheme as "an almost unbelievable hodgepodge," 176 F.Supp. 466, 472 (1959). Despite reversal on appeal, the Supreme Court did not disturb that characterization. The Supreme Court was not concerned with the wisdom of exempting one type of activity as opposed to another. Concluding that the exemptions that *were* recognized were reasonably related to the State's objective in enacting a general proscription of Sunday labor, the Court upheld the closing laws despite the fact that a greater penalty was imposed on other activities which might also seem reasonable to permit on Sundays. Quoting from *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955), the Court stated in *Two Guys, supra,* 366 U.S. at 591–592, 81 S.Ct. at 1140:

> "Evils in the same field may be of different dimensions and proportions, requiring different remedies. . . . Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others."

WPC contends that our inquiry should be more searching than that undertaken by the Supreme Court in 1961. This Court has noted that the Supreme Court appears to be applying a more rigorous "rational basis" test than the toothless formulation enunciated by the Supreme Court in *McGowan, supra,* 366 U.S. at 425–426, 81 S.Ct. 1101. *Woman's Liberation Union of Rhode Island, Inc. v. Israel,* 379 F.Supp. 44, 49 (D.R.I.1974), *aff'd,* 512 F.2d 106 (1st Cir. 1975). Thus the Court will no longer speculate as to reasons which would support the constitutionality of legislation that are not articulated by or implicit in an enactment. *Woman's Liberation Union, supra* at 49. This statement does not mean, however, that a court can ignore legitimate statutory purposes or rationale for classifications which become obvious from a fair reading of the statutory scheme simply because the statute lacks a declaration of policy. *Id.* Furthermore, unless we are dealing with a classification subject to strict judicial scrutiny, the burden remains upon the challenger to demonstrate that a classification lacks

a substantial relation to the underlying legislative purpose. *See Mathews v. Lucas,* —— U.S. ——, ——, 96 S.Ct. 2755, 2764, 49 L.Ed.2d ——, 44 U.S.L.W. 5139, 5143 (1976).

Even if we engage in a more searching review today than that of 1961, we cannot ignore the continued vitality of *McGowan* and its companion cases. Subsequent decisions of the Supreme Court have not cast any doubt upon the durability of the legal analysis made therein. To the contrary, the Court has recently dismissed two appeals for want of a substantial federal question from state court decisions upholding a Sunday closing exemption for retailers based upon the total number of employees employed on a daily or shift basis.[8] *Giant of Maryland, Inc. v. State's Attorney,* 267 Md. 158, 298 A.2d 427 (Md.1973), *appeal dis'd,* 412 U.S. 915, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973); *Bertera's Hopewell Foodland, Inc. v. Masters,* 428 Pa. 20, 236 A.2d 197 (1967), *appeal dis'd,* 390 U.S. 597, 88 S.Ct. 1261, 20 L.Ed.2d 158 (1968). *Cf. Hicks v. Miranda,* 422 U.S. 332, 344–345, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Buzynski v. Oliver,* 538 F.2d 6 (1st Cir. 1976).

### B

In *McGowan* and its companions, the Supreme Court held that the enactment of Sunday closing laws constitutes a proper exercise of the state's power to pass laws to promote the "health, safety, recreation and general well-being of [its] citizens," and that "[t]he present purpose and effect of [these laws] . . . is to provide a uniform day of rest for all citizens." *McGowan, supra,* 366 U.S. at 444–445, 81 S.Ct. at 1115. It also upheld, as consistent with and in furtherance of this purpose, exemptions for the retail sale of "commodities . . . necessary either for the health of the popu-

lace or for the enhancement of the recreational atmosphere of the day," *id.* at 426, 81 S.Ct. at 110, and the limitation of the number of stores which might sell them so as to "serve the public purpose of providing these items on Sundays and, at the same time, limit the commercial activities ordinarily attendant to their sale," and minimize the burdens of enforcing the closing laws. *Gallagher, supra,* 366 U.S. at 623–624, 81 S.Ct. at 1125. Conversely, the Court ruled that the legislature could single out those activities which it considered particularly inharmonious with the recreational atmosphere of the day.

"It was within the power of the legislature to have concluded that these businesses were particularly disrupting the intended atmosphere of the day because of the great volume of motor traffic attracted, the danger of their competitors opening on Sunday and their large number of employees." *Two Guys, supra,* 366 U.S. at 591, 81 S.Ct. at 1140 (footnotes omitted).

### C

■ Replacing its former commodity-based exemption for retail establishments, Rhode Island has instituted a scheme "based solely on the size of the business involved and not the type of merchandise sold." Pls. Memo. at 9. On the basis of an eight-hour work day, the maximum hours limitation operates to authorize Sunday permits for retail establishments which are operated by no more than 10 full-time employees (and/or proprietors) on an average weekday, that is, a "small" operation.[9] WPC, concedes that it does not satisfy the maximum hours limitation and, to the contrary, is the largest pharmacy in Woonsocket. It does not contend that it should be considered a "small" operation, *see* note 9,

---

**8.** The Court does not appear to have considered a similar amendment to the Maryland Sunday closing law for Anne Arundel County which exempted all retail establishments not employing more than one person other than the owner in *McGowan, supra,* since that provision was added to the statute after the challengers' arrest. *Id.,* 366 U.S. at 423, 81 S.Ct. 1101. *See*

*Bertera's Hopewell Foodland, supra* at 236 A.2d at 217 n. 4 (Roberts, J., concurring in result).

**9.** There is nothing in the record to suggest that the maximum hours limitation is an irrational or arbitrary means for defining a "small" retail establishment.

*supra*, but rather that, under the Sunday closing law scheme, the legislature cannot constitutionally distinguish between retail establishments [10] on the basis of their size.

WPC's argument finds no support in past decisional law.[11] The decisions considering a blanket exemption for retail establishments on the basis of their small size have uniformly upheld the distinction as a reasonable classification in furtherance of the overall goals of Sunday closing laws. *Southway Discount Center, Inc. v. Moore*, 315 F.Supp. 617 (N.D.Ala.1970); *Giant of Maryland, Inc. v. State's Attorney, supra; Rebe v. State's Attorney*, 262 Md. 350, 277 A.2d 616 (1971); *Bertera's Hopewell v. Masters, supra; Opinion of the Justices*, 229 A.2d 188 (N.H.1967); *Richards Furniture v. Board*, 233 Md. 249, 196 A.2d 621 (1963); *Opinion of the Justices*, 191 A.2d 637 (Me. 1963). The reasoning of the Maryland Court of Appeals in *Richards, supra*, 233 Md. at 263–264, 196 A.2d at 629, is representative:

> "[T]he Act [which permits shops with only one employee to remain open on Sunday] conforms with the Maryland [Sunday Closing] scheme . . . . The operation of large commercial stores on Sunday would materially interfere with the recreational atmosphere of the day, while small retail operations will not."

In an advisory opinion, the Maine Supreme Judicial Court stated:

> "One purpose [of Sunday closing laws] is the elimination of concentrations of traffic and the hustle and bustle on Sundays caused by the business operations of large merchandising concerns which tend to create unreasonable interference with the efforts of citizens to find rest and leisure on those days.

> \* \* \* \* \* \*

> The Legislature might conclude that these adverse effects would be kept to a minimum if only small stores as defined were permitted to open and that the public interest would be best served by excepting as a class the proprietors of small stores." *Opin. of Justices, supra*, 191 A.2d at 640.

The Court cannot discount the sound reasoning of the cited decisions. The maximum hours limitation appears to be carefully tailored to delineate small from large operations. Its aim is not merely to minimize the number of employees actually working on Sunday, but to minimize the amount of commercial activity on Sunday without completely disregarding the needs of the consuming public in enjoyment of the day. Thus the fact that a large supermarket only had one employee on hand on a Sunday would not prevent the public from flocking to its doors in numbers more accurately reflecting its true capacity for business. The legislature could quite reasonably conclude that nothing short of limiting the size of the retail establishment would prevent fierce competition, concentration of traffic and commercial activity, and also minimize problems of enforcement of the overall statutory scheme. The law clearly does not evince an intent to give a "boost" to so-called "Mom and Pop" stores. *Compare West v. Winnsboro*, 211 So.2d 665, 672 (La.1968). *Cf. Bertera's, supra*, 236 A.2d at

---

10. WPC's contention that the legislature cannot rationally distinguish between retail (eligible for exemption under chapter 5–23) and wholesale (arguably eligible under § 25–1–6) establishments is unpersuasive. The legislature could reasonably conclude that wholesale operations would only increase the commercialism of the day without in any way serving the needs of the consuming public in pursuit of its Sunday activities. *See McGowan, supra.*

11. With all due respect, the Court does not believe that the analysis of the cases cited by WPC is consistent with that of the Supreme Court in *McGowan* and its companions. In addition, in each of those cases the courts considered commodity-, as opposed to size-, based classifications. For both reasons, the Court believes that the decisions cited in the body of this opinion deserve greater weight.

For the record, WPC cited the following cases: *Spartan Industries, Inc. v. Oklahoma City*, 498 P.2d 399 (Okla.1972); *West v. Winnsboro*, 211 So.2d 665 (La.1968); *Hughes v. Reynolds*, 223 Ga. 727, 157 S.E.2d 746 (1967); *Spokane v. Valu-Mart, Inc.*, 69 Wash.2d 712, 419 P.2d 993 (1966); *Nation v. Giant Drug Co.*, 396 P.2d 431 (Wyo.1964); *Rogers v. Delaware*, 57 Del. 334, 199 A.2d 895 (1964).

216 (Roberts, J., concurring). Under § 5-23-1, each separate noncontiguous establishment constitutes a retail establishment eligible for a permit, even if it is but one branch of an interstate chain of retail stores. Indeed, WPC acknowledges that other branches of its parent corporation are eligible for permits under § 5-23-2 and have been operating on Sundays under the new law.

■ WPC's complaint that the state acted arbitrarily in replacing a "hodgepodge" of commodity exemptions with a clear, uniform, and easily applied exemption is not persuasive. Enforcement considerations alone justify discarding the commodity-based scheme. Similarly, WPC's challenge to § 5-23-2's retention of a commodity-based exemption for bakery products and greenery cannot be sustained in view of the Supreme Court's analysis of almost identical claims in *McGowan* and its companions. In *Gallagher, supra*, 366 U.S. at 623, 81

S.Ct. at 1125, the Court upheld the exemption for bread as an item which the legislature could have "found to be required to be sold fresh daily." Although the Court does not appear to have commented directly on the propriety of an exemption for trees, shrubs and plants, the clear import of *McGowan* and its companion cases mandates similar treatment of a greenery exemption, since it is hard to conceive how the sale of greenery, which is designed to beautify and not to be consumed, could increase the crass commercialism to be eschewed on Sundays.

■ For the foregoing reasons, the Court concludes that WPC has failed to demonstrate the likelihood of success on the merits.[12] The request for a temporary restraining order is therefore denied. The Court will forthwith request the Chief Judge of the First Circuit Court of Appeals to convene a panel of three judges to hear the merits of the action.

12. After final preparation of this opinion was completed, the Court received plaintiffs' letter of July 26, 1976, expanding upon the argument of selective enforcement first raised at the July 23 hearing. Plaintiffs claim that the Attorney General is engaging in selective prosecution by refusing to interpret Rhode Island's statutory scheme as prohibiting the licensing of golf courses and marinas which do not meet the maximum hours limitation of § 5-23-2.

The Court has great difficulty following that part of plaintiffs' argument which focuses on selective enforcement of chapter 5-23 since the ordinary definition of "retail establishment," as used in chapter 5-23, § 5-23-1, does not readily call to mind a golf course or marina, nor has the Attorney General so interpreted it. Pl. Ex. 2-D. The Court has held, for the purposes of this motion, *see* note 7, *supra*, that WPC has standing to challenge only chapter 5-23 of the Sunday closing scheme and therefore will not entertain WPC's claim of discrimination between retail and nonretail businesses. *See also* note 10, *supra*.

The only indication in the record that this chapter is not being implemented in an evenhanded manner lies in the issuance of a Sunday permit to Douglas Drugs, one of WPC's competitors, by the City of Woonsocket. At the July 23, 1976, hearing, counsel for the state represented to the Court that the license had been issued without the Attorney General's knowledge or concurrence and contrary to his interpretation of the bakery and greenery exemption to the maximum hours limitation. *See* Pl. Ex. 2-B.

The Court interprets this statement to signify that the Attorney General will forthwith take all steps necessary to effect a recission of the Douglas Drug license on the ground issued. It is on the basis of thus understanding that the Court denies WPC's request for temporary relief.

WPC also contends for the first time that the divestment by statutory amendment (as interpreted by the Attorney General) of its Sunday license (by its terms valid to 4/1/77) unconstitutionally deprives the licenseholder of "substantive due process" of law, citing *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); and *Janda v. General Motors*, 237 Md. 161, 205 A.2d 228 (1964).

Neither the argument briefly sketched out in one paragraph of plaintiffs' letter nor a reading of the cited cases has enlightened the Court as to the substance of plaintiffs' argument, to which, in addition, defendants have had no opportunity to respond. This is equally true of WPC's argument that the potential imposition of three different criminal penalties for one action violates due process. As a result, the Court will not address these arguments herein. Plaintiffs may present them, in expanded form, to the three-judge panel for plenary review. Lastly, plaintiffs' belated attempt to distinguish the cases raised by defendants and cited in the body of this opinion has not persuaded the Court to alter its reliance upon them.